# Gibson v. Commonwealth

Jan. 22, 1946.

Shumate & Shumate for appellant.

Eldon S. Dummit, Attorney General, and J. L. Hughett, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Henry Gibson was charged with shooting Lafayette Miller and burning his body. Upon his trial he was found guilty and his punishment fixed at life imprisonment. On this appeal he earnestly insists that (1) the court should have peremptorily instructed the jury to find him not guilty; and (2) the court gave erroneous instructions to the jury.

Lafayette Miller, an elderly man, lived by himself in a remote section of Lee County. Several other families

lived within a mile or two of Miller's home. It was generally reputed that Miller had a good deal of money which he kept in a small metal trunk. He also owned several guns. Late in the afternoon of November 1, 1944, Mrs. Bertie Holder, one of Miller's neighbors, heard several shots in the direction of his home. Mrs. Holder and a companion went to a nearby neighbor's, and, finding no one there, they went to the home of Lloyd Brandenburg in order to report the incident. Jack Brandenburg and his son went to the Miller home and found it in flames. The roof was falling in when they reached the scene about 8:30 p. m. Brandenburg said he saw part of a human skeleton in the burning house. The fire had progressed to a point where it was impossible for him to enter the building. Several other parties soon came upon the scene. Thinking that Miller may have gone to the home of Mrs. Millie Gibson, the mother of appellant, or to the appellant's home, to spend the night, Brandenburg and a companion started out to see if they could find him. When they reached the appellant's home, some two miles distant, between one and two o'clock in the morning, they found him kindling a fire. Gibson said his wife was in travail and that he was going to get his mother who was a midwife to attend her. Mrs. Gibson gave birth to a child around four o'clock in the morning.

The Miller home was completely destroyed by the fire. The metal trunk had been broken open and parts of a badly burned skeleton were found. A small piece of metal said to be a bullet was attached to a fragment of the skull. Two other similar pieces of metal were found under the hips of the skeleton. The metal parts of the guns could not be located. Miller was not seen nor heard of after the fire. Gibson denied murdering Miller and burning his home. He said he had a few drinks of whiskey with some companions late in the afternoon of November 1st, and that he went home and went to bed about seven o'clock. He appeared upon the scene of the tragedy about nine o'clock the following morning and helped Miller's relatives gather some corn. There was testimony showing that he was drinking that day. He offered to pay Miller's son-in-law and one or two of his children ten dollars which he said he owed Miller. He had in his possession a British Bulldog pistol he was in jail Miller gave the pistol to Mrs. Gibson. which he said he had pawned to Miller, but that while

Miller's son-in-law and his wife said they saw the pistol in Miller's possession about nine days before his house was burned and that he said it had been pawned to him. Gibson said he loaned the pistol to Oscar Johnson on the afternoon of the tragedy and both Mrs. Gibson and her daughter said Johnson told them that he murdered Miller and robbed him and burned his home in order to destroy the evidence. Johnson was not present at the trial. Gibson said he had sold some whiskey for $21 on the day of the tragedy and that was how he got the money to repay his debt to Miller.

Counsel for Gibson vigorously contend that the jury should have been instructed to find him not guilty because the corpus delicti was not established, and, even if it be conceded that it was, the evidence was insufficient to connect him with the crime. We are of the opinion, however, that the evidence was sufficient to establish the corpus delicti. True it is there was no direct testimony showing that the body found in the burning building was that of Miller. We have noted, however, that the metal box where he kept his money had been broken open, that bullets had been fired into the body and nothing has been heard of him since the tragedy. As indicated, we think the circumstances sufficiently show that the body was that of Miller and that he was murdered. Furthermore, it must not be overlooked that no trace of the guns could be found.

We think also that the evidence connecting Gibson with the crime, though circumstantial, was sufficient to warrant the submission of the case to the jury. He admitted that he was drinking on the day of the tragedy and there was testimony showing that he was drinking the following day. He had the British Bulldog pistol in his possession the day after the tragedy, though he said he had loaned it to Oscar Johnson on the previous day. He was up and dressed and was building a fire when Brandenburg and his companion reached his home. It is hardly plausible that, if Miller had loaned Gibson $10 and taken the pistol as security, he would have given the pistol to Gibson's wife while he was in jail. In all probability Miller was well acquainted with Gibson and knew the type of man he was dealing with. Gibson's own testimony shows that he was engaged in illicit liquor traffic, and, as we have noted, he said it was through the sale of whiskey that he obtained the money

with which he voluntarily offered to repay his debt to Miller's relatives. We place little credence in the testimony of Mrs. Gibson and her daughter to the effect that Oscar Johnson told them he had committed the crime. It would be most improbable for one who had committed such a heinous crime to confess his guilt to the family of another toward whom the finger of suspicion was pointing.

The indictment charged only Gibson with the crime. However, the instructions authorized the jury to find him guilty if they thought he committed the crime, or if they thought he aided and abetted Oscar Johnson, two men by the name of Allen or any other person or persons in its commission. Gibson denied having any part in the crime and said he was not nearer than half a mile to Miller's home on the day of the tragedy. It was error, therefore, to submit the aiding and abetting instruction to the jury. Cupp v. Commonwealth, 296 Ky. 464, 177 S. W. 2d 581; Bailey v. Commonwealth, 295 Ky. 441, 174 S. W. 2d 719.

It follows, therefore, that the judgment should be and it is reversed, with directions to set it aside and for proceedings consistent with this opinion.