**John T. HALE, Appellant,**

v.

**John WINGO, Warden, Kentucky State Penitentiary, Eddyville, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 9, 1970.

Rehearing Denied Dec. 18, 1970.

Joseph J. Grace, Paducah, for appellant.

John Breckinridge, Atty. Gen., George Rabe, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

John T. Hale, on his examining trial in the quarterly court of Caldwell County on a charge of murdering one Lillian Catherine Denham, was denied bail and was ordered to be confined in the state penitentiary for safekeeping pending trial. Hale then sought release on bail through habeas corpus proceedings in the Caldwell Circuit Court. His application was denied and he is appealing here from the order of denial.

Evidence for the purpose of showing Hale's guilt was presented in the quarterly court on the examining trial. This evidence was considered by the circuit court in the habeas corpus proceeding, together with additional evidence introduced in the latter proceeding. The issue, under Section 16 of the Kentucky Constitution, was whether the proof of Hale's guilt was evident or the presumption of his guilt great.

The evidence was that the alleged victim failed to return to her family home on a Saturday in June 1966, and was never seen again by anyone thereafter, except by her sister Carolyn, who saw her on the Friday following the Saturday of her failure to return home. Four years later a badly decomposed body, consisting mostly of bones,

was found in an abandoned cistern on a farm which Hale had occupied during 1965. The body was examined by a pathologist who said it was the body of a female 18 to 23 years of age, from 5' 2" to 5' 5" in height, who had weighed from 120 to 140 pounds, and had brown hair. These characteristics closely conformed with those of the missing girl. The girl's father and sister undertook to identify the body as being the girl's on the basis that the legs, on which there were some remnants of flesh, looked like hers, and the teeth looked like hers. Found in the cistern were wires and weights, some still attached to part of the body, indicating that the body had been weighted to sink.

Following the discovery of the body the missing girl's sister Carolyn for the first time disclosed that on the Friday following the girl's failure to return home Carolyn had seen her, first in a house trailer and later in Hale's house, in the presence of Hale and one Bill Rogers. Her testimony at the examining trial was that her sister, called Catherine by the family, was in a bloody condition, apparently as the result of an abortion, and seemed to be critically ill. Hale and Rogers refused Carolyn's request that they call a doctor, and they restrained Carolyn, by threats and by hitting her, from going to get a doctor. Both Hale and Rogers had guns. At Hale's house Hale told Carolyn that he was going to kill Catherine, and he shoved Carolyn out of the room in which Catherine was lying, he remaining alone in the room with Catherine. Carolyn then heard a shot fired in that room. She did not go back in that room because Rogers would not let her. Hale and Rogers told Carolyn they would kill her if she told anyone what happened. The reason she did not disclose the incident until after the body was discovered some four years later was that she was afraid of Rogers.

 It is our opinion that the judges below were warranted from the evidence in concluding that the proof of Hale's guilt

was evident and the presumption of his guilt great. We think Carolyn's evidence alone, coupled with the fact of Catherine's disappearance, was sufficient, without regard to the matter of the validity of the identification of the body in the cistern. Carolyn testified that Hale, with a gun in his hand, announced that he was going to kill Catherine, and directly thereafter a shot was fired in a room occupied only by Hale and by Catherine, who was lying weak and helpless. Although Hale and Rogers previously had allowed Carolyn to see and talk with Catherine they did not permit her, after the shot was fired, to enter the room where Catherine lay, and Catherine was never seen again. We think the evidence raised a strong inference of the commission of murder by Hale. It was not necessary, in order to prove the corpus delicti, that the body be found or seen after death. See Warmke v. Commonwealth, 297 Ky. 649, 180 S.W.2d 872; Gibson v. Commonwealth, 301 Ky. 402, 192 S.W.2d 187.

It is true that some question of Carolyn's credibility might exist by reason of her silence for a period of four years, but she offered a plausible explanation for that, and certainly it cannot be said that her testimony is so lacking in credibility as to lack the quality of conviction.

 The rule is firmly established in this jurisdiction that the judge hearing the application for bail is vested with sound discretion in determining whether the Commonwealth has sustained its burden of showing evident proof or great presumption. This court has been consistent in upholding denials of bail except where the proof consisted of incompetent evidence or there was conflicting evidence creating a plausible basis for the defense of self-protection or for a reduction of the offense to a noncapital degree. See Marcum v. Broughton, Ky., 442 S.W.2d 307; Schirmer v. Commonwealth, Ky., 354 S.W.2d 748.

The judgment is affirmed.

All concur.