PEOPLE v DOYLE

Docket No. 51612. Submitted December 1, 1981, at Grand Rapids.—
  Decided July 13, 1982. Leave to appeal applied for.

  Perry Doyle was convicted by a jury of premeditated first-degree
  murder and was sentenced to life imprisonment by the Cass
  Circuit Court, James E. Hoff, J. Defendant appeals alleging
  error in the admission of his confession and other errors. *Held:*

    1. The defendant's confession should not have been admitted
  into evidence. Absent this confession, there was no evidence of
  premeditation and deliberation.

    2. A review of the record indicates that the defendant's
  confession was involuntary.

    3. The questioning of the defendant should have ended when
  the assistant prosecutor telephoned the prosecuting attorney to
  inform him that defendant might have been under the influ-
  ence of drugs.

    4. The pretext "rap" session conducted with the defendant,
  who was obviously mentally ill, rendered the statements given
  at such session inadmissible as involuntary.

    Reversed.

    BEASLEY, P.J., dissented. He would find, contrary to the
  majority, that there was no impropriety in the detaining and
  questioning of the defendant when viewed in the full context
  indicated by the record. He, like the majority, believes it was
  obvious defendant suffered some mental problems. However, he
  would not preclude the police from attempting to question an
  obvious suspect because there might be doubt as to mental
  competency for trial. He does not believe improper police
  tactics were employed here. He would find the trial judge's
  findings of fact after the *Walker* hearing were supported by the
  evidence and would not hold his conclusions of law clearly
  erroneous. He would not find the 2-1/2 hour interrogation

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 4 Am Jur 2d, Appeal and Error § 76.
  29 Am Jur 2d, Evidence § 590.
[2, 4] 29 Am Jur 2d, Evidence § 585.
[3, 5] 29 Am Jur 2d, Evidence §§ 573, 575, 576.

unreasonably long under the circumstances of this case since there has never been any serious question that defendant killed the deceased. He would affirm defendant's conviction.

## OPINION OF THE COURT

1. CRIMINAL LAW — APPEAL — WALKER HEARINGS.

The Court of Appeals reviews a trial court's ruling on the admission of a confession following a *Walker* hearing for clear error.

2. CRIMINAL LAW — APPEAL — EVIDENCE — STATEMENTS.

The Court of Appeals is required to examine the entire record below and make an independent determination of voluntariness when a defendant alleges that the trial court erred in admitting evidence of certain statements the defendant made to the police which were allegedly involuntary, and the relevant factors to be considered in such a determination are: (a) the duration and conditions of detention; (b) the manifest attitude of the police toward the accused; (c) the physical and mental state of the accused; and (d) the diverse pressures which sap or sustain the accused's powers of resistance or self-control.

3. CRIMINAL LAW — CONFESSIONS.

The courts stand guard for those who, because of mental incapacity or low intellectual development, are easily led to confess by improper pressures.

4. CRIMINAL LAW — APPEAL — STATEMENTS.

The critical issue before the Court of Appeals in an appeal where a defendant alleges that the trial court improperly admitted an involuntary confession is whether the confession made by the defendant and introduced at trial was the product of a rational intellect and a free will.

## DISSENT BY BEASLEY, P.J.

5. CRIMINAL LAW — POLICE QUESTIONING — SUSPECT'S MENTAL COMPETENCY — EVIDENCE.

*The police may question an obvious suspect in a criminal case despite the fact that they might doubt the suspect's mental competency for trial; the question of whether statements by the suspect are admissible in evidence is to be answered later in a courtroom.*

6. APPEAL — WALKER HEARINGS — COURT RULES.

*The Court of Appeals, in reviewing a trial judge's findings after a Walker hearing, gives considerable weight to the judge's find-*

*ings and hestitates to substitute its judgment for that of the trial judge; error in such findings is not shown where the findings of fact are supported by the evidence and where the conclusions of law are not clearly erroneous (GCR 1963, 517.1).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William T. Grimmer,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*Susan J. Smith,* Assistant State Appellate Defender, for defendant on appeal.

Before: BEASLEY, P.J., and R. B. BURNS and M. B. BREIGHNER,* JJ.

PER CURIAM. Defendant was tried and convicted on a single-count information charging him with premeditated first-degree murder. MCL 750.316; MSA 28.548. After a jury verdict, defendant was sentenced to serve a term of life imprisonment. He appeals by leave granted.

Our disposition of the final issue raised by the defendant in his appeal renders the discussion of the other issues raised unnecessary. We reverse because defendant's confession should not have been admitted into evidence. Absent this confession, there was no evidence of premeditation and deliberation.

This Court reviews a trial court's ruling on the admission of a confession following a *Walker* hearing, *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), for clear error. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974). This Court is required to examine the entire record below and make an independent determination of the ultimate issue of voluntari-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ness. *People v Robinson,* 386 Mich 551, 558-559;
194 NW2d 709 (1972).

After a review of the record below, we are
convinced that the defendant's confession to the
murder of Kathryn Lucas was involuntary.

The factors which we have considered are: (a)
the duration and conditions of detention; (b) the
manifest attitude of the police toward the accused;
(c) the physical and mental state of the accused;
and (d) the diverse pressures which sap or sustain
the accused's powers of resistance or self-control.
*Culombe v Connecticut,* 367 US 568, 603-606; 81 S
Ct 1860; 6 L Ed 2d 1037 (1961); *People v Carl
Johnson,* 99 Mich App 547, 554-555; 297 NW2d 713
(1980).

The courts stand guard for those who, because of
mental incapacity or low intellectual development,
are easily led to confess by improper pressures.
*Culombe, supra; Blackburn v Alabama,* 361 US
199; 80 S Ct 274; 4 L Ed 2d 242 (1960); *Fikes v
Alabama,* 352 US 191; 77 S Ct 281; 1 L Ed 2d 246
(1957); *People v Langston,* 57 Mich App 666, 675;
226 NW2d 686 (1975); *People v Stanis,* 41 Mich
App 565; 200 NW2d 473 (1972); *People v King,* 27
Mich App 619; 183 NW2d 843 (1970).

The critical issue before us is whether the con-
fession made by the defendant, introduced at trial,
was "the product of a rational intellect and a free
will". *Lynumn v Illinois,* 372 US 528, 534; 83 S Ct
917, 920; 9 L Ed 2d 922, 926 (1963), quoting *Black-
burn v Alabama, supra.*

A few hours after the victim's body was found,
the defendant was interrogated at the Cassopolis
Police Department. The interrogators did not tell
him they were investigating the victim's death.
Instead, the police and prosecutor had a "rap"
session with defendant concerning his earlier re-

quest for help in locating his "real parents". After two hours of questioning, during which defendant did not confess to the crime, he was taken to the scene of the crime. On the way back to the sheriff's office, defendant blurted out "I killed her". Defendant then was taken to the police department where the confession was taken.

On the basis of what the police and the assistant prosecutor who conducted the interrogation must have known, the questioning of this defendant should have ended when the assistant prosecutor telephoned the prosecuting attorney to inform him that defendant Doyle might have been under the influence of marijuana and/or other drugs. Doyle hallucinated during the initial interview. He said that he wanted a "test" to find his real parents. He talked about poisonous spiders and insects in his room. He suggested, alternatively, that the FBI, CIA and Mafia were after him. Some answers that the defendant gave during the interview were unresponsive, others involved totally different subjects. He spoke repeatedly about his fears concerning his masculinity, fearing that his "real" parents might have changed him from a girl to a boy shortly after his birth.

It should have been clear to the police chief and the assistant prosecutor conducting the questioning that defendant Doyle was a very sick man. This fact was widely known in the community and specifically known to Chief Williams. Any statement, admission or confession from Doyle by this interrogation method is not voluntary within the technical meaning developed in the courts. The pretext "rap" with this defendant who was obviously mentally ill rendered the statements given

inadmissible as involuntary. *Langston, supra; King, supra; Stanis, supra.*

Reversed.

BEASLEY, P.J. *(dissenting).* I respectfully dissent. Defendant, Perry Doyle, was convicted by a jury of murder in the first degree and sentenced to the mandatory life imprisonment.

In his opening statement at trial, defense counsel admitted that defendant stabbed the victim to death[1] and asserted the defense of insanity. Four psychiatrists testified, two for each side.[2] All testified, as part of defendant's history, that he killed Kathryn Lucas. Also, the police chief testified regarding defendant's confession that he killed Kathryn Lucas. A tape of a statement made prior to the confession was played to the jury. Thus, the chief contested issue at trial concerned defendant's mental capacity at the time of the killing. There was no denial of the fact that defendant killed Kathryn Lucas.

However, on appeal, the majority reverses because they say defendant's confession should not have been admitted into evidence.

Prior to trial, a *Walker*[3] hearing was held. The prosecution produced a psychiatrist who testified that defendant was mentally competent on the day he made the statement. At the *Walker* hearing, defendant testified that he remembered *Miranda*[4]

---

[1] In his opening statement, defense counsel said, "[T]he defense contends most vigorously what the prosecutor claims occurred, in some respects didn't".

[2] A fifth psychiatrist testified, but his testimony related only to defendant's mental health history. He did not examine defendant after the Kathryn Lucas killing.

[3] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

warnings being given to him, although he did not particularly understand them. He also testified he "wanted to get it all out", seeming to be referring to the killing of Kathryn Lucas. Contrary to the majority, I do not see any impropriety in the detaining and questioning of defendant by the police chief and assistant prosecutor, when viewed in the full context indicated by the record of the proceedings in the trial court.

On the morning of Wednesday, September 14, 1977, the stabbed, hacked-up body of Kathryn Lucas was found in her home. The police chief knew that in 1975 defendant had robbed Kathryn Lucas with a shotgun, tied her up, and left her in the bathroom of her home, but defendant apparently avoided trial when found mentally incompetent to stand trial. In addition, shortly before September 14, defendant had twice come to the police station seeking out the chief to talk to him. On Saturday, the chief was conducting a police staff meeting when defendant tried to enter a back door and talk to the chief. Defendant was advised the chief was busy and could not talk to him. On Monday, he returned, and the police chief did talk to him.

Under these circumstances, I would find it neither surprising nor improper for the police and prosecutor to talk to defendant about the murder of Kathryn Lucas. Neither would I be critical of the chief for inquiring of defendant at length regarding what defendant wanted to talk to the chief about before telling defendant that the body of Kathryn Lucas had been discovered. The record indicates a defendant who was eager to tell somebody what he had done.[5]

---

[5] At the *Walker* hearing, defendant testified that "I wanted to get it all out".

Like the majority, I would believe that it was obvious defendant suffered some mental problems. Unlike the majority, I would *not* preclude the police from attempting to question an obvious suspect because there might be doubt as to mental competency for trial. The question of whether such statements are admissible in evidence comes much later in a courtroom.

I agree with the majority that the courts "stand guard" to prevent advantage being taken of those who are of low mental capacity, but I do not agree that "improper police tactics" were employed here.

At the lengthy *Walker* hearing, the trial judge saw and heard the witnesses. Under these circumstances, we give considerable weight to the trial judge's findings and hestitate to substitute our judgment for his. GCR 1963, 517.1.

At the *Walker* hearing, the only expert testimony regarding defendant's mental condition was given by an experienced, highly qualified psychiatrist. He said defendant was not mentally ill. The trial judge was entitled to believe him. After hearing the proofs, the trial judge took the matter under advisement and then filed a carefully prepared opinion, making findings of fact and applying the law. He found that defendant received *Miranda* warnings and waived his *Miranda* rights. I would hold that the trial judge's findings of fact were supported by the evidence and would not hold his conclusions of law clearly erroneous.

The majority emphasize the duration of the interrogation, which apparently started at 12:30. Around 3, defendant told the police chief, "I killed her". Under some circumstances, this might be an unreasonable length of time, but not in this case where there has never been any serious question that defendant killed Kathryn Lucas. I would not

find error in the trial court's findings after the *Walker* hearing.

Since this is a dissent, no purpose will be served by a lengthy review of the other issues raised by defendant.

The only issues of substance in this case went to defendant's mental health and the obvious concern of the jury that they not unwittingly render a verdict that would place the defendant back in the community.[6]

I would vote to affirm.

---

[6] The following response of a juror on voir dire is typical of the juror's attitudes, as shown by the voir dire transcript:

"I would want to listen to what was going to happen. I would not want to give a verdict of not guilty by reason of insanity if he were allowed to be free. I would not want him out to do the same thing again after we found out what was to happen if he was to undergo treatment or rehabilitation, then I would not have any problems reaching not guilty."