PEOPLE v DOYLE (ON REMAND)

Docket No. 70477. Submitted April 4, 1983, at Lansing.—Decided
    September 27, 1983. Leave to appeal applied for.

Perry Doyle was convicted of first-degree murder by a jury in
    Cass Circuit Court and was sentenced to life imprisonment,
    James E. Hoff, J. Defendant appealed and the Court of Appeals,
    by a two-to-one vote, reversed, finding that defendant's confes-
    sion was involuntary and should not have been admitted into
    evidence and that, absent the confession, there was no evidence
    of premeditation and deliberation, 117 Mich App 731; 324
    NW2d 492 (1982). The people sought leave to appeal to the
    Supreme Court, which, in lieu of granting leave, reversed for
    the reasons stated in Judge Beasley's dissent and remanded to
    the Court of Appeals for consideration of the defendant's re-
    maining issues, 417 Mich 936 (1983). Defendant raised four
    other issues. On remand, *held:*

    1. The admission of evidence of a prior assault by defendant
    upon the deceased did not constitute an abuse of discretion.
    Evidence of the prior assault had bearing on the relationship
    between defendant and the victim and had a bearing on defen-
    dant's assertion that the murder was committed without intent,
    premeditation, and deliberation. Furthermore, any prejudice
    resulting from the admission into evidence of the fact of the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 320.

[2-5] 29 Am Jur 2d, Evidence § 321.

[3] 29 Am Jur 2d, Evidence § 322.

[4] 29 Am Jur 2d, Evidence §§ 324, 326.

[5] 29 Am Jur 2d, Evidence §§ 324, 325.

[6] 40 Am Jur 2d, Homicide § 785.

[7] 40 Am Jur 2d, Homicide §§ 263, 266.

Modern status of the rules requiring malice "aforethought," "delib-
    eration," or "premeditation" as elements of murder in the first
    degree. 18 ALR4th 961.

[8, 9] 40 Am Jur 2d, Homicide § 68.

[10, 11] 40 Am Jur 2d, Homicide §§ 417-419.

previous assault did not outweigh its probative value on the issues.

2. Sufficient evidence was presented at trial to establish the elements of premeditation and deliberation.

3. The trial court did not abuse its discretion by admitting photographs of the deceased into evidence.

4. Defendant's claims that the trial court erred in instructing the jury, over defense counsel's objection, in regard to the disposition of a defendant found guilty but mentally ill and that error occurred as a result of the trial court's refusal to give the requested "short form" dispositional instruction concerning a not guilty by reason of insanity verdict are without merit.

Affirmed.

R. M. MAHER, J., concurred in the result only.

1. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

The admission of evidence of other bad acts committed by the defendant should be carefully considered by the trial court because of the possibility or the likelihood, as the case may be, that its probative value will be outweighed by the potential for the jury to be unfairly prejudiced against the defendant.

2. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of a criminal defendant's similar criminal act may be admitted where: (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced; (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan, or system in doing the act, or opportunity, preparation, or knowledge; (3) one or more of those factors is material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

3. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — MATERIALITY.

The materiality requirement of evidence of a similar bad act of a defendant offered to show the defendant's intent, motive, absence of mistake or accident, or scheme, plan or system in doing an act is satisfied only when intent, or any of the other items on the statutory list, is an important issue in the case either because it is contested by defendant or because it is necessary to establish identity (MCL 768.27; MSA 28.1050).

4. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

A proposal that the similarity of other acts shows that the act on trial was not inadvertent, unintentional, accidental, or done without guilty knowledge does not require as great a similarity with the other bad acts as those instances where a common scheme, plan, or design is sought to be proved.

5. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — MOTIVE — INTENT.

The motive or intent of a defendant may be shown by prior acts, even where those acts would constitute commission of another crime.

6. HOMICIDE — EVIDENCE — FIRST-DEGREE MURDER.

A prosecutor, in order to establish the corpus delicti of first-degree murder, must present evidence of each element of the crime, independent of the defendant's extrajudicial confession.

7. HOMICIDE — EVIDENCE — PREMEDITATION — DELIBERATION — INFERENCES.

Premeditation and deliberation may be inferred from the surrounding circumstances including prior relationships tending to show motive, a murder weapon acquired and positioned in preparation for homicide, evidence in the record supporting the inference that the killer transported the victim to a secluded location for an illicit or criminal purpose, circumstances surrounding the killing suggesting premeditation and deliberation, and organized conduct subsequent to the killing suggesting the existence of a plan.

8. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION.

A lapse of time sufficient to have permitted the defendant an opportunity to take a "second look" at his actions must have existed in order for premeditation and deliberation to be found in a first-degree murder prosecution.

9. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION.

Factors to be considered in determining whether an accused had an opportunity to subject his actions to a second look in determining premeditation and deliberation include: (1) any prior relationship between the defendant and the victim indicative of a motive; (2) defendant's actions before the murder; (3) the facts and circumstances of the homicide; and (4) the defendant's conduct subsequent to the killing.

10. CRIMINAL LAW — EVIDENCE — PHOTOGRAPHS — HOMICIDE.

   The admission into evidence of photographs of the corpse of a homicide victim is a matter addressed to the sound discretion of the trial judge.

11. CRIMINAL LAW — EVIDENCE — PHOTOGRAPHS.

   Photographs which are pertinent, relevant, competent, or material on any issue in a case are not rendered inadmissible merely because they show the details of a gruesome or shocking crime.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William T. Grimmer,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

State Appellate Defender (by *Herb Jordan),* for defendant on appeal.

ON REMAND

Before: BEASLEY, P.J., and R. B. BURNS and R. M. MAHER, JJ.

BEASLEY, J. In 117 Mich App 731; 324 NW2d 492 (1982), by a two-to-one vote, this Court reversed a jury verdict of guilty of first-degree murder in the within case.[1] On March 29, 1983, the Supreme Court reversed the judgment of the Court of Appeals for the reasons stated in the dissent and remanded the case for consideration of the defendant's remaining issues. Since our earlier decision was based solely upon a finding that "defendant's confession should not have been admitted into evidence", and since that issue has been decided by the Supreme Court reversing this Court's conclusion, we consider that any issue with respect to

[1] That panel consisted of Judge R. B. BURNS and visiting Judge M. B. BREIGHNER voting to reverse, and the author in dissent voting to affirm. The Supreme Court reversed this Court's judgment at 417 Mich 936 (1983).

admissibility of defendant's confession has been decided.

On appeal, defendant raises four other issues. First, he contends that evidence of a 1975 assault upon the victim was improperly admitted as a similar bad act. Prior to calling the victim's daughter, Lydia Lucas, as a witness in his case in chief, the prosecutor made an offer of proof regarding the prior assault:

> "*Mr. Grimmer:* The offer is that the testimony of this witness will be that, of an incident that took place back on November 23 of 1975 in which she will testify to the effect she was returning home from being in Niles with a friend; that she went back to the residence at 111 Harding Street where she resided; when she got into the home and observed, witnessed a man in her home, a * * * male, she observed in the back of that particular individual going into, I believe it was the bathroom, heard her mother's voice; at that time she left the particular residence and reported the incident to the police. There would be subsequent testimony which would connect up who that particular individual, that that particular individual was, in fact, Perry Doyle in the home on November 23, 1975, and at that time an assault had taken place upon Mrs. Kathryn Lucas by a Perry Doyle. The testimony is offered to show in this particular matter part of the motive and intent upon which this particular attack upon Mrs. Lucas was perpetrated."

Over defendant's objection, the trial court ruled that the evidence would be admissible for the limited purpose of demonstrating motive and intent.

The admission of evidence of another bad act committed by the defendant should be carefully considered by the trial court because of the possibility or the likelihood, as the case may be, that its

probative worth will be outweighed by the potential for the jury to be unfairly prejudiced against the defendant.[2]

In *People v Golochowicz*,[3] the Supreme Court enumerated four requirements that must be satisfied before evidence of other bad acts may be introduced:

"(1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice." (Footnote omitted.)

In *People v Cobb*,[4] this Court upheld the trial court's admission into evidence of a prior bad act of the defendant because the defense of accident was claimed by defendant and, thus, his intent was a material issue in the case.

In *People v Spillman*,[5] we discussed the materiality requirement regarding the introduction into evidence of a prior bad act to demonstrate intent:

[2] *People v Oliphant*, 399 Mich 472, 490; 250 NW2d 443 (1976).

[3] 413 Mich 298, 309; 319 NW2d 518 (1982). See, also, Note, *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, 70 Yale L J 763, 767-769 (1961).

[4] 82 Mich App 167, 170; 266 NW2d 451 (1978).

[5] 63 Mich App 256, 261; 234 NW2d 475 (1975), *rev'd on other grounds* 399 Mich 313; 249 NW2d 73 (1976). For a comprehensive analysis of the materiality issue, see Lilly, An Introduction to the Law of Evidence, § 45, pp 129-138.

"The materiality requirement, then, is designed to cover those cases where intent—or any of the other items on the statutory list—is an important issue in the case either because it is contested by defendant, * * * or because it is necessary to establish identity, *i.e.,* 'to show that defendant was the one who intended to do the act'." (Citations omitted.)

The similarity of other acts to show that the act on trial was not inadvertent, unintentional, accidental, or done without guilty knowledge does not require as great a similarity with the other bad acts as those instances where a common scheme, plan, or design is sought to be proved.[6]

At issue in *People v Chism*[7] was whether the defendant's motive in a first-degree murder case may be shown by his commission of prior crimes. The *Chism* Court held that, since motive is a relevant element in a prosecution for murder, it can be proven by prior acts, even though the prior acts constituted the commission of another crime.[8]

Applying the foregoing principles to the within matter, we find that the admission of evidence of the prior assault upon the deceased did not constitute an abuse of discretion. Inasmuch as a highly contested issue at trial was whether defendant had the requisite intent to commit first-degree murder, defendant's intent and motive were relevant. Evidence of the prior assault has a bearing on the relationship between defendant and the victim and has a bearing on defendant's assertion that the murder was committed without intent, premeditation, and deliberation.

A primary issue at trial, if not the primary

---

[6] McCormick, Evidence (2d ed), § 190, p 450, fn 42.

[7] 390 Mich 104; 211 NW2d 193 (1973).

[8] 390 Mich 118-119. Additional cases supporting this proposition are found at McCormick, Evidence (2d ed), § 190, p 450, fn 44.

issue, was whether defendant was sane at the time of the slaying. Part of the insanity defense was based on defendant's claim that the victim was in the Mafia and was attempting to kill him. Since the prior assault occurred in 1975, at a time when defendant did not consider that the decedent was a threat to him, it was relevant to negate his claim that the murder of Kathryn Lucas was prompted by his alleged fear of her. The fact of the 1975 assault has a tendency to show that defendant's hostility toward the victim preceded any alleged belief he had that she was a member of the Mafia.

We conclude that the evidentiary requirements of MRE 404(b) and *People v Golochowicz, supra,* were satisfied. There was substantial undenied evidence that the prior assault was committed; in fact, at the time, in 1975, defendant admitted to the Village of Cassopolis Chief of Police that he had committed the 1975 assault. That previous, serious assault tended to show that defendant fatally stabbed Kathryn Lucas with premeditation and deliberation as it had a bearing on his relationship with the victim and indicated a possible motive and intent in committing the homicide. Unquestionably, defendant's intent was material to a determination of his guilt of the charged offense of first-degree murder. Furthermore, we do not find that any prejudice resulting from the admission into evidence of the fact of the previous assault outweighed its probative value on the issues.

Second, defendant argues that the prosecutor failed to present sufficient evidence at trial, apart from his confession, to establish the necessary elements of premeditation and deliberation, thereby requiring reversal of his conviction of first-degree murder.

In *People v Allen*,[9] the Supreme Court adopted the dissenting opinion of this Court,[10] which held that the prosecutor, in order to establish the corpus delicti of first-degree murder, must present evidence of each element of the crime, independent of the defendant's extrajudicial confession.

In *People v Germain*,[11] we discussed the necessary elements of premeditation and deliberation:

"However, the components of premeditation and deliberation need not be established by direct evidence, but may be inferred from the surrounding circumstances provided such inference originates from an adequate basis in record evidence. * * * Such factors from which those elements may be inferred include prior relationship tending to show motive, a murder weapon acquired and positioned in preparation for homicide, evidence in the record supporting the inference that the killer transported the victim to a secluded location for an illicit or criminal purpose, circumstances surrounding the killing suggesting premeditation and deliberation, and organized conduct subsequent to the killing suggesting the existence of a plan." (Citations omitted.)

In the within matter, the decedent sustained 11 stab wounds to her left hand and 6 to the right hand. The medical examiner testified that these wounds were typical "defense wounds", which he defined as injuries suffered in an attempt to thwart an assailant. The medical examiner further testified that the decedent bled to death from multiple "slash type wounds". When the body was discovered, there were signs of a struggle and the house was locked from the inside. In a letter

[9] 390 Mich 383, 385-386; 212 NW2d 21 (1973).
[10] 39 Mich App 483, 494-506; 197 NW2d 874 (1972).
[11] 91 Mich App 154, 165; 284 NW2d 260 (1979).

written to the medical examiner, which was introduced by defense counsel, defendant stated that the slaying was committed without guilt or anger. Additionally, the prior assault committed by defendant upon the victim in 1975, which may have been prompted by the daughter of the victim's rejection of defendant's attempts at friendship, indicates a possible motive.

To establish premeditation and deliberation, a court must find a lapse of time sufficient to have permitted the defendant an opportunity to take a "second look" at his contemplated actions.[12] In *People v Meadows*,[13] we described four factors indicating a sufficient opportunity for the defendant to take a "second look": (1) any prior relationship between the defendant and the victim indicative of a motive; (2) defendant's actions before the murder; (3) the facts and circumstances of the homicide; and (4) the defendant's conduct subsequent to the killing.

Our careful review of the record reveals that sufficient evidence was produced apart from defendant's statements to establish the necessary elements of first-degree murder. As the medical testimony indicated, defendant inflicted myriad stab wounds against a victim trying to defendant herself, which suggests that he had an opportunity to consider his actions and to have a "second look". The removal of the telephone receiver from the hook and the locking of the door of the house when leaving suggest a careful scheme or plan. Defendant's prior relationship with the victim and his unsuccessful attempts at friendship with the

---

[12] *People v Vail*, 393 Mich 460, 468-469; 227 NW2d 535 (1975); *People v Hoffmeister*, 394 Mich 155, 159; 229 NW2d 305 (1975), *reh den* 394 Mich 944 (1975).

[13] 80 Mich App 680, 691; 263 NW2d 903 (1977).

victim's daughter, when considered in light of the prior assault upon the victim, are suggestive of a motive to take the victim's life.

Consequently, we hold that the evidence presented at trial, when considered separately from defendant's confession, supported the inference that defendant murdered Kathryn Lucas with premeditation and deliberation. This is not a case where the sole evidence touching on the homicide is the brutality of the murder; rather, defendant's conduct before, during, and after the crime was sufficient to establish the necessary elements of premeditation and deliberation.

Third, defendant asserts that the trial court abused its discretion by admitting five photographs of the deceased into evidence. A careful review of the record discloses that defense counsel timely objected to the introduction of two photographs showing the dead body at the scene of the crime, two autopsy photographs of the victim's hands, and a photograph of the victim's head which revealed bloodstained sheets. In overruling the objections, the trial court stated:

*"The Court:* Well, in viewing the photographs, while it is true a body is shown in both photographs, there are other things that are not shown in both photographs, and quite a few other things. I rule the exhibits are not cumulative.

\* \* \*

*"The Court:* Okay. One, while the photographs are not pleasant, I do not judge them inflammatory. Two, the relevancy is obvious. The people have the burden of proving, first of all, a corpus delicti, body of the crime, a homicide, and the relevancy of these go to the point of a homicide and also to whether the wounds were self-inflicted."

In *People v Fuzi #2,*[14] this Court summarized the law applicable to this evidentiary issue:

"The admission into evidence of photographs of the corpse of a homicide victim is a matter addressed to the sound discretion of the trial judge. * * * Photographs which are pertinent, relevant, competent or material on any issue in the case are not rendered inadmissible merely because they show the details of a gruesome or shocking crime." (Citation omitted.)

Through the testimony of the medical examiner, the prosecutor established that the photographs were fair and accurate representations of the murder scene and the victim's body. Thus, a proper foundation for the admission of the photographs into evidence was laid.[15]

The photographs served to buttress the testimony of the medical examiner relating to the extent and nature of the stab wounds. They also illustrate the corpus delicti. In particular, the photographic evidence reveals that multiple stab wounds were inflicted, including the many defense wounds to the hands sustained by the victim in an attempt to repel her assailant. Inasmuch as defendant contested that the murder was committed with premeditation and deliberation, as evidenced by his motion for directed verdict at the close of the prosecutor's proofs, the photographs were relevant in that they tend to show that defendant committed a methodical, merciless, and violent murder, for which he had an opportunity, during the repeated stabbings, to take a "second look".

---

[14] 116 Mich App 277, 281; 323 NW2d 358 (1982).

[15] McCormick, Evidence (2d ed), § 214, pp 530-531; Lilly, An Introduction to the Law of Evidence, § 110, pp 423-424; Anno: *Authentication or verification of photograph as basis for introduction in evidence,* 9 ALR2d 899; *People v Cyr,* 113 Mich App 213, 225; 317 NW2d 857 (1982), *lv den* 414 Mich 888 (1982).

Like the trial court, we do not find that the photographs were so inflammatory that they prejudiced the jurors from the proper exercise of their fact-finding task. In light of our conclusion that the evidence was relevant, we decline to hold that the trial court abused its discretion in overruling defendant's objections.

Similar to the within matter is *People v Wallach,*[16] where the defendant was convicted of two counts of first-degree murder. One of the issues on appeal concerned the trial court's admission of photographs depicting the two victims buried in the snow and an examination of the corpses at the morgue. Apparently, on the basis that the defendant did not deny that the victims were violently killed, the *Wallach* Court held that the photographs were improperly admitted. However, the error was held not to require reversal of the defendant's convictions.

Therefore, like in *Wallach,* had we found that the evidence should not have been admitted, we would not have been inclined to reverse. The evidence against defendant was overwhelming. Defense counsel conceded that defendant was the assailant, but interposed an insanity defense, and defendant's confession to the crime was introduced. The admission of the photographs, assuming *arguendo* that it was error to admit them, was not an error that prejudiced the jury to the extent that defendant was deprived of a fair trial.

We note that this was not a murder prosecution where the identity of the assailant was in dispute. In his opening statement, defense counsel outlined the two main issues: was defendant insane at the time of the homicide and, if not, did he have the requisite state of mind necessary for conviction of

[16] 110 Mich App 37, 63-67; 312 NW2d 387 (1981).

first-degree murder. Based on defense counsel's framing of the issues, defendant's state of mind was the primary issue. Accordingly, any evidence shining light thereon, if not more prejudicial than probative, should be admissible for the jury to decide the case. Murder is a heinous and distasteful crime which we believe requires the jurors, as the conscience of the community, to weigh all relevant evidence, including photographs of the victim. It is of interest that the photographs, if anything, may have been beneficial to the insanity defense, as the jurors might have reasoned that a "sane man" would not perpetrate the type of fatal stabbing that occurred here.

Last, defendant claims that the trial court erred when it instructed the jury, over defense counsel's objection, in regard to the disposition of a defendant found guilty but mentally ill.[17] Defendant also argues that error occurred as a result of the trial court's refusal to give the requested "short form" dispositional instruction[18] concerning a not guilty by reason of insanity verdict.

The record reveals that the trial court charged the jury on the "long form" not guilty by reason of insanity instruction, as found at proposed CJI 7:8:08[19] and the instruction relating to the disposition of a defendant found guilty but mentally ill,

---

[17] The statute providing for the "guilty but mentally ill" verdict is found at MCL 768.36; MSA 28.1059. In *People v McLeod,* 407 Mich 632; 288 NW2d 909 (1980), the Supreme Court upheld the constitutionality of the statute.

[18] Proposed CJI 7:8:07. This proposed criminal jury instruction provides:

"If you find the defendant committed the act but was not criminally responsible at the time, then he is not guilty by reason of insanity. If you make such a decision, the defendant will be immediately committed to the custody of the Center for Forensic Psychiatry for evaluation of his present mental condition and such further medical and legal proceedings as are then deemed necessary."

[19] Proposed CJI 7:8:08 provides:

"(1) If you find the defendant committed the act but was not criminally responsible at the time, then he is not guilty by reason of

in conformity with proposed CJI 7:8:10.[20] Based on this Court's holdings and analyses in *People v Thomas*[21] and *People v Tenbrink*,[22] we conclude that defendant's claim is clearly without merit.

Affirmed.

R. B. BURNS, J., concurred.

R. M. MAHER, J., concurred in the result only.

insanity. If you make such a decision, the defendant will be immediately committed to the custody of the Center for Forensic Psychiatry for a period not to exceed sixty days.

"(2) During that time, the statute directs that the center thoroughly examine and evaluate the present mental condition of the defendant in order to reach an opinion as to whether he is mentally ill and requires medical treatment.

"(3) Within the sixty-day period, the center will file a report with the court, prosecuting attorney and defense counsel. If the report states that the person is not mentally ill or does not require treatment, the defendant shall be discharged [from custody].

"(4) If the report finds that the person is mentally ill and does require treatment, the Court may [will] direct the prosecuting attorney to file a petition with the Probate Court for an order of hospitalization or an order of admission to a clinical facility. If the Court so directs, the center may retain the person pending such hearing.

"(5) If, after a hearing before the Probate Court, the defendant is found not to be mentally ill or not to be a person requiring treatment, the defendant shall be discharged [from custody].

"(6) However, if the person is ordered hospitalized, admitted to a facility or otherwise to receive treatment, he shall not be discharged or placed on leave without prior consultation with the Center for Forensic Psychiatry. Once hospitalized, the defendant will be hospitalized until his mental condition is such that he no longer is judged to require treatment." (Footnote omitted.)

[20] Proposed CJI 7:8:10 provides:

"(14) If you find the defendant committed the crime while responsible but mentally ill, then you may return a verdict of guilty but mentally ill. This verdict may be of the crime charged [or any lesser included offense].

"(15) In most respects a verdict of guilty but mentally ill is the same as a verdict of guilty. The defendant may be imprisoned for the same period of time as he would if he were found guilty. [Alternatively, he could be placed on probation for a period of time the same as or greater than he would be if found guilty.] The distinction is that the verdict of guilty but mentally ill imposes upon the Department of Corrections an obligation to provide appropriate psychiatric treatment during the period of imprisonment or while the defendant is on probation."

[21] 96 Mich App 210, 221; 292 NW2d 523 (1980).

[22] 93 Mich App 326, 330-331; 287 NW2d 223 (1979).