PEOPLE v HILL

Docket No. 90664. Submitted June 10, 1987, at Grand Rapids. Decided April 18, 1988.

Kenneth D. Hill was convicted of the first-degree murder of Joyce Tucker and the felonious assault of Darnell Beasley and associated weapons charges following a jury trial in Kent Circuit Court, George R. Cook, J. At trial, the prosecution was permitted to admit into evidence the testimony of Joyce Tucker given at the preliminary examination of defendant on a prior felonious assault charge arising out of an alleged assault by defendant upon Tucker which took place about a month prior to the murder and assault in this case. The trial court also let Beasley testify in person when Beasley was located during the trial even though Beasley's preliminary examination testimony had already been read to the jury following a prior ruling by the court that Beasley was not available to testify. In response to the defense opposition to Beasley's live testimony on the basis that it would be unduly prejudicial to defendant to have the jury hear Beasley's testimony twice, the court instructed the jury to disregard Beasley's preliminary examination testimony and rely on the live testimony and to give no greater or lesser weight to Beasley's testimony even though it heard it twice. Defendant appealed.

The Court of Appeals *held:*

1. Testimony concerning a defendant's prior bad acts is admissible where there is substantial evidence that defendant committed the prior bad act, that there is some special quality about the prior bad act tending to establish the defendant's identity, motive, plan, opportunity, preparation or knowledge, that one of those factors is material to the determination of defendant's guilt of the charged offense and that the probative value of the evidence of the prior bad act outweighs the danger

REFERENCES

Am Jur 2d, Homocide §§ 315, 334, 336, 371, 393, 394, 439

Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR 4th 961.

Admissibility, as res gestae, of accusatory utterances made by homicide victim before act. 74 ALR3d 963.

of unfair prejudice. The victim's recorded testimony with respect to the alleged felonious assault by defendant upon her a month prior to the acts giving rise to the murder charge tended to show the defendant's deliberation and premeditation. Such showing of intent was material in view of defendant's claim that the victim's death was the result of a spontaneous act which resulted from heat of passion.

2. It was not an abuse of discretion to permit Beasley's live testimony when he was located after his preliminary examination testimony had already been read to the jury on the basis of a determination that he was not available. Undue emphasis was not placed upon Beasley's testimony by reason of the fact that the jury heard it both live and from the reading of the preliminary examination transcript. The trial court's instructions cured any possible undue emphasis or unfair prejudice.

Affirmed.

1. HOMICIDE — EVIDENCE — PRIOR TESTIMONY — PRIOR BAD ACT.

It is not error for the trial judge in a homicide trial to permit the admission into evidence of the testimony given by the victim at the preliminary examination of the defendant on a prior felonious assault charge arising out of an assault by the defendant on the victim which occurred a month prior to the homicide where the defense in the homicide trial is that the defendant did not have the requisite intent to commit first-degree murder, since the evidence of this prior bad act would tend to establish premeditation or deliberation and thus have a probative value which outweighed any danger of unfair prejudice (MRE 404[b]).

2. CRIMINAL LAW — EVIDENCE — RES GESTAE WITNESSES — UNAVAILABLE WITNESSES — PRELIMINARY EXAMINATION TESTIMONY.

It is not an abuse of discretion for a trial court to permit a res gestae witness to testify in person where the preliminary examination testimony of that person had been read to the jury following a determination that the witness was unavailable to testify and the prosecution had used due diligence to locate the witness and where the trial court instructs the jury that it is to disregard the preliminary examination testimony and rely solely on the live testimony and that the jury is to give no greater or lesser weight to the testimony of that witness because he is, in effect, testifying twice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*George S. Buth* and *James R. Rinck,* for defendant on appeal.

Before: J. B. SULLIVAN, P.J., and G. R. McDONALD and J. M. GRAVES, JR.,* JJ.

J. M. GRAVES, JR., J. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), felonious assault, MCL 750.82; MSA 28.277, and carrying a concealed weapon, MCL 750.227; MSA 28.424. Defendant was sentenced to mandatory life imprisonment on the first-degree murder conviction, imprisonment of from two to four years on the felonious assault conviction to run concurrently with the life sentence, imprisonment of from two to five years on the concealed weapons conviction to run concurrently with the life sentence, and the mandatory two-year consecutive term of imprisonment on the felony-firearm conviction. Defendant appeals as of right and we affirm.

The offenses occurred on May 20, 1985, in Grand Rapids, Michigan. Defendant was charged with the murder of Joyce Tucker and the assault of Darnell Beasley. The testimony established that on May 20, 1985, Beasley and the decedent, Joyce Tucker, had lunch together at Tucker's residence. As Beasley and Tucker were getting ready to leave Tucker's house, defendant appeared at the door, walked in and went to speak to Tucker. Tucker told defendant she could not talk to him then and that she had to go back to work. Defendant offered Tucker a ride back to work and she informed him that she already had a ride. Defendant then got angry, pulled out a pistol and pointed it at Beas-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ley, asking him what he was doing there. Defendant held Tucker with one hand and had the gun pointed toward Beasley with the other. When Tucker moved, defendant turned his head and Beasley was able to run out the door and escape. Beasley ran to a neighbor's house and informed her that someone was trying to kill Joyce Tucker and him. The neighbor then ran to find Tucker's mother. Tucker's mother ran down to Tucker's apartment and discovered Tucker dead on the floor in front of the door. An autopsy showed that there were seven gunshot wounds caused by six bullets. The cause of death was listed as multiple gunshot wounds to the chest and back.

Defendant testified in his own defense and stated that he and Tucker had been involved in a relationship for seven years and had a six-year-old child. Defendant admitted that in March of 1985 he wrote Tucker a letter threatening to kill her if he found his child called another man "Daddy." Defendant explained that he wrote this letter because Tucker was not visiting him in jail and was going to take his child away. Defendant was released from jail on April 2, 1985, and went looking for Tucker, but was unable to find her until April 14 when he found her at her church. He denied having a gun or knife at that time. Defendant was arrested for felonious assault on April 16, 1985, and released from jail on May 18, 1985. He testified that he did not try to contact Tucker until May 20, 1985. He admitted that he was carrying a gun in his coat pocket that day, but claimed that he had bought it two months before and that he carried the gun because he lived in a bad neighborhood.

As for the May 20 incident, defendant explained that he pointed the gun at Beasley only when he heard Tucker tell Beasley to "get him" and when

he saw Beasley make a move like he was reaching for something. After Beasley left the apartment, defendant and Tucker began arguing. Defendant admitted shooting Tucker, but stated that he did not know when that was, where she was standing or what was said before he shot her. Defendant testified that he was angry and upset and that he did not intend to shoot Tucker when he went there.

Defendant raises two issues regarding the admission of evidence at trial. First, defendant contends that the trial court committed error requiring reversal by admitting Tucker's prior recorded testimony concerning a felonious assault allegedly perpetrated by defendant against Tucker.

After the jury was impaneled, the trial court approved a motion by the prosecutor to permit the prosecution to read to the jury testimony of Tucker given at a prior preliminary examination in which defendant was charged with feloniously assaulting Tucker with a knife. The charge arose out of an incident which occurred on April 14, 1985, when defendant met Tucker in the church parking lot. The trial court ruled that such evidence was admissible based on *People v Morris,* 139 Mich App 550; 362 NW2d 830 (1984). We agree.

Under *Morris,* the prior recorded testimony of a homicide victim may be admissible pursuant to MRE 804(b)(1). However, if the prior testimony contains allegations of prior similar bad acts (as here), the testimony must also be admissible pursuant to the four-pronged test enunciated in *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982). *Morris, supra* at 557. Both of these conditions are met in the instant case. Thus, the trial court did not abuse its discretion in admitting Tucker's prior testimony into evidence.

On appeal, defendant does not contend that Tucker's prior testimony does not meet the requirements of MRE 804(b)(1). Rather, defendant argues that the admission of the testimony violates the Supreme Court's ruling in *Golochowicz, supra.* In *Golochowicz,* the Supreme Court ruled that, because of the potential for prejudice which inheres in the admission of similar uncharged bad acts, bad acts or similar acts evidence is inadmissible except for a few narrowly defined circumstances. *Golochowicz, supra* at 308. The exceptions to the general rule are codified in MRE 404(b), which authorizes admission of a defendant's prior conduct to show "motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." *Golochowicz, supra* at 309, requires that to admit evidence of a defendant's prior bad acts

(1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice.

Here, all four prongs of the *Golochowicz* test are satisfied. First, there was substantial evidence that defendant actually perpetrated the alleged bad act

at issue, i.e., the felonious assault. Tucker testified that on April 14, 1985, in the parking lot of her church, defendant held a six-inch switchblade or razor up to her chest and threatened to do something terrible to her if she did not go with him to his mother's house to talk.

Second, evidence of a prior assault is admissible to show motive or intent, factors listed in MRE 404(b), particularly where the defense of accident is asserted. *Morris, supra* at 557. Defendant argues that there was no special quality or circumstance of the prior bad act to meet the second prong of the *Golochowicz* test. We do not agree. The degree of similarity of the prior bad acts to the charged offense which must be shown when the evidence of the prior bad acts is being admitted to show that the act on trial was not inadvertent, unintentional, accidental, or done without guilty knowledge is not as great a degree of similarity as must be shown where a common scheme, plan, or design is sought to be proved. *People v Doyle (On Remand),* 129 Mich App 145, 151; 342 NW2d 560 (1983). Defendant's prior assault of the victim with a weapon showed sufficient similarity to the charged offense to meet the second prong of *Golochowicz.*

Third, a central issue in the case at bar was whether defendant had the requisite intent to commit first-degree murder. Thus, one of the MRE 404(b) factors was material to the case. Defense counsel sought a manslaughter conviction, arguing that there was no premeditation or deliberation and that the killing took place in the heat of passion. Defendant also initially told some relatives that the killing was accidental.

Finally, the probative value of the evidence substantially outweighed the danger of unfair prejudice. Defendant was charged with murdering

Tucker. Tucker's testimony showed that defendant feloniously assaulted her a month prior to her killing. This is highly probative of defendant's motive and intent to kill and, thus, the probative value of this testimony substantially outweighed the danger of unfair prejudice.

The trial court did not err in admitting Tucker's prior testimony, since all four prongs of the *Golochowicz* test were met.

Next, defendant contends that the trial court committed error requiring reversal by allowing Beasley to testify in person after he had been declared unavailable and his preliminary examination testimony had been read to the jury. Defendant argues that the occurrence placed undue emphasis on Beasley's testimony, resulting in unfair prejudice to defendant.

On the morning of the second day of trial, the court conducted a hearing to determine whether the prosecution had exercised due diligence in trying to locate Darnell Beasley, a res gestae witness. The court ruled that due diligence had been exercised, that the witness was unavailable, and that Beasley's preliminary examination testimony could be read to the jury. The prosecution opened its proofs by having Beasley's preliminary examination testimony read to the jury.

At the beginning of the third day of trial, defense counsel moved for a mistrial because Beasley, the witness whose prior testimony had been read to the jury, had been located in Pennsylvania and the prosecution intended to put Beasley on the stand to testify. Defense counsel opposed such testimony and moved for a mistrial, arguing that it would be unduly prejudicial to have Beasley's testimony heard twice by the jury. The trial court postponed its ruling on the motion until the witness could actually testify. Beasley testified as to

the events of May 20, 1985, leading up to Tucker's death. The testimony basically reiterated what Beasley had said during the preliminary examination. Before Beasley's testimony, the trial judge gave the jury two curative instructions: (1) that Beasley's testimony should be given no greater or lesser weight although he was, in effect, testifying twice; and (2) that they were to totally disregard the reading of the preliminary examination transcript and rely solely on Beasley's live testimony.

We find that no error resulted from the trial court's allowing Beasley to testify at trial even though his preliminary examination testimony had been read to the jury after the prosecutor had shown that Beasley was unavailable. Defendant does not contest the court's finding that Beasley was unavailable, rather, defendant argues that the live testimony placed undue emphasis on Beasley's testimony, resulting in unfair prejudice to defendant. We do not agree.

The prosecution has a duty to exercise due diligence in its efforts to locate and produce all res gestae witnesses. *People v Pearson,* 404 Mich 698, 732-733; 273 NW2d 856 (1979). The prosecution was acting in accordance with these requirements when it moved that the court should allow Beasley's preliminary examination testimony to be introduced on the basis that Beasley was unavailable to testify at trial. As it turned out, Beasley was located. The prior reading of his preliminary examination testimony should not preclude Beasley from testifying against defendant.

We disagree with defendant that the occurrence gave Beasley's testimony such undue emphasis that unfair prejudice to defendant resulted. Beasley's live testimony basically reiterated what Beasley testified to during the preliminary examination. Further, the court instructed the jury that

Beasley's testimony should be given no greater weight even though he was in effect testifying twice and that the jury should totally disregard the reading of Beasley's preliminary examination testimony. We find that these instructions cured any possible undue emphasis and unfair prejudice to defendant.

While a search of Michigan case law reveals that this issue has never been previously addressed, in the context of these particular facts we cannot declare that the trial court abused its discretion. Trial testimony is often repetitious and can be excluded if needless. See MRE 403. Further, the trial judge is permitted to read back testimony to a jury when requested, and the practice is not considered "undue emphasis" on testimony. Indeed, a trial court abuses its discretion if it absolutely refuses a jury's request that certain portions of the testimony be read back. See *People v Howe,* 392 Mich 670, 675-676; 221 NW2d 350 (1974); accord, *People v Harvey,* 121 Mich App 681, 684; 329 NW2d 456 (1982). Likewise, in the instant situation no undue influence was placed on Beasley's testimony by allowing Beasley to testify in person regarding the events which took place on May 20, 1985.

Defendant's convictions and sentences are affirmed.