## Warmke v. Commonwealth.

May 26, 1944.

650

J. R. Eskridge and W. W. Kirtley for appellant.

Hubert Meredith, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

This appeal is from a manslaughter sentence of nine years imposed on the appellant in connection with the death of her infant child. The sole ground urged for reversal was that the corpus delicti was not sufficiently shown.

The appellant resided in Utica, a village in Daviess County. Some weeks prior to July 8, 1943 she went to Louisville and there gave birth to an illegitimate child. On July 8, 1943, she traveled to Cloverport, in Breckinridge County, by bus arriving about 8 o'clock p. m. It was raining very hard and she went into a drug store for shelter. A. T. Couch, an employee of the store, loaned her a coat in which to wrap her baby. She went out leaving her suitcase in the store. She called Couch by telephone about 10:30, requesting him to come to the store so that she might get her suitcase. When she met Couch at the store she did not have the baby but returned the borrowed coat. Early the next morning she went to the home of a kinswoman, Mrs. Pate. The town marshal, having learned that the baby was missing, went to Mrs. Pate's home and questioned the appellant. She told him that after she left the drug store she started to cross a railroad trestle near the town in an effort to get to the home of a friend and that while she was crossing a train approached and she crawled over on the edge of the ties and accidently dropped the baby. The town marshal and a highway patrolman then took the appellant to the trestle and she pointed out where the baby had been dropped. There was a creek under

the trestle at this point. It was flooded and the current was swift. A baby's cap was found on the bank of the creek and the appellant exclaimed, "There is my little baby's cap." The baby's body was never found.

When the officers returned to town with the appellant she told them, after some questioning, that she purposely threw the baby into the creek because she was unable to face the humiliation of going home with an illegitimate child.

On the trial she repudiated the confession she had made to the officers and testified that she dropped the baby accidentally, in the manner she first told the officers. She testified that she was scared and excited and didn't remember saying she dropped the baby purposely. She said that after she dropped the baby she wandered around all night barefooted and in a dazed condition and that in the morning she put on her shoes and stockings and went to Mrs. Pate's. She gave as a reason for stopping off at Cloverport that it was her father's home town and that she desired to talk to a friend, Mrs. Atwill, and obtain advice. She did not see Mrs. Atwill but says that she was looking for her house when she dropped the baby and that thereafter she remembered nothing until early morning.

It is axiomatic that the corpus delicti must be shown. This term means the body of the offense, the substance of the crime. Proof of the corpus delicti in homicide cases involves two principal facts, namely, that the person is dead and that he died as a result of the injury alleged to have been received. In short, there must be proof of a death and proof that such death was caused by the criminal agency of the accused. Higgins v. Com. 142 Ky. 647, 134 S. W. 1135; 13 R. C. L. 730.

But the law does not subscribe to the rigid formula that the body must be found or seen after death. The death may be established by circumstantial evidence. 26 Amer. Juris. 376. As said in 13 R. C. L. 737, the death may be shown "by proof of criminal violence adequate to produce death and which accounts for the disappearance of the body. In short, the body must be found or there must be proof of death which the law deems to be equivalent to direct evidence that it was found."

We think there was sufficient proof of the death of

the baby in the case before us. It was dropped, either purposely or accidentally, by the appellant from the railroad trestle into the flooded creek below and was never found. It seems beyond the bounds of possibility that the baby survived this ordeal and was never thereafter heard of. At least, we think the evidence was ample to justify the jury's finding that death ensued·

It is argued for the appellant, however, that the corpus delicti must be established by evidence other than the confession of the accused out of court and that there was no other evidence here. The soundness of the legal proposition thus advanced may be admitted. There must be proof of the component elements of the corpus delicti, a death and the criminal agency of the accused, by proof in addition to the confession of the accused made out of court. Criminal Code of Practice, Sec. 240; Moseby v. Com., Ky., 113 S. W. 850, Com. v. Burgess, 91 S. W. 266. But, as indicated above, the appellant testified that the baby was dropped into the creek. Thus there was proof of the death independent of the appellant's confession made out of court.

The remaining question is whether there was proof, in addition to the appellant's confession made out of court, of her criminal agency in causing the death· Her agency in causing the death was admitted from the witness stand. Was there evidence, independent of her confession out of court, that this agency was criminal? We think there was an abundance of such evidence. Such independent evidence may be circumstantial as well as direct.

Circumstances pointing clearly to the fact that the appellant purposely dropped the baby from the trestle may be thus summarized. She had an impelling motive, concealment of the birth of the illegitimate child. Her reason for going to Cloverport instead of her home is rather vague and unsatisfactory. This reason was that she decided to consult her friend, Mrs. Atwill, yet she never did so. She eventually wound up at Mrs. Pate's and not at Mrs. Atwill's. But, most illuminating of all is her failure to notify any one that she had dropped the baby from the trestle, if it was dropped accidentally. She accounts for this by saying she was in a dazed condition, nevertheless she called Mr. Couch by telephone to come to the drug store so that she might get her suitcase. She returned the coat to him. She had

borrowed this coat to wrap the baby in. It is singular that she would have accidentally dropped the baby without dropping the coat· It is even more singular that she never notified Mrs. Pate, her kinswoman, the next morning of the loss of the baby. These circumstances and the justifiable inferences to be drawn from them, amply warranted the jury in finding that the dropping of the baby from the trestle was purposely, and not accidentally, done by the appellant.

Affirmed.