PEOPLE v WILLIAMS

Docket No. 72519. Argued January 10, 1985 (Calendar No. 7).—Decided September 4, 1985.

John L. Williams, Jr., was convicted by a jury in the Bay Circuit Court, John X. Theiler, J., of first-degree murder. The Court of Appeals, R. M. MAHER, P.J., and R. B. BURNS and MARUTIAK, JJ., vacated the defendant's conviction of first-degree murder in an opinion per curiam and remanded the case for entry of a conviction of second-degree murder and resentencing on the ground that the defendant's confession should not have been used to establish premeditation and deliberation (Docket No. 53160). The people appeal and the defendant cross-appeals.

In an opinion by Justice RYAN, joined by Chief Justice WILLIAMS and Justices BRICKLEY, BOYLE, and RILEY, the Supreme Court *held:*

In a prosecution of first-degree premeditated murder, the elements of premeditation and deliberation need not be shown independent of a defendant's confession to sustain a conviction of first-degree premeditated murder where it is shown, independent of the defendant's confession, that common-law or statutory second-degree murder was committed by the defendant.

1. Corpus delicti, as used in homicide cases, refers not to the body of the deceased, but to the body of the wrong—the loss sustained. In criminal homicide prosecutions, the delicti or essence of the wrong is the wrongful taking of a human life by a criminal agency. It is an inaccurate and unwarranted reading of the history and purpose of the corpus delicti rule to suggest the need for independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession.

2. Where, as in this case, it is shown without reference to the

REFERENCES FOR POINTS IN HEADNOTES

[1-6] Am Jur 2d, Evidence § 1134 *et seq.*

Am Jur 2d, Homicide § 245 *et seq.*

Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.

defendant's confession that a common-law or statutory second-degree murder was committed by the defendant, the risk of convicting the defendant of a killing when none occurred, is met and obviated. No injustice results where a defendant's confession that the independently proved second-degree murder was, in addition, deliberate and premeditated is admitted and thereby results in a conviction of the statutorily heightened crime of first-degree murder.

Reversed.

Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that while the defendant's extrajudicial confession was properly admitted because the corpus delicti of felony and second-degree murder had been established, the defendant's conviction of first-degree premeditated murder should be vacated because the prosecution failed to establish the elements of premeditation and deliberation independent of the defendant's extrajudicial confession. The corpus delicti of an offense may be established by direct evidence, circumstantial evidence, and reasonable inferences drawn from the evidence from which the trier of fact may reasonably find that acts constituting all of the essential elements of the offense have been committed and that someone's criminality was responsible for the commission. The establishment must be independent of a defendant's extrajudicial confession, however. After the corpus delicti is established, the confession may be admitted subject to applicable constitutional and evidentiary challenge. There is no reason to apply the rule differently where first-degree premeditated murder is charged. In this case, the prosecution presented no independent evidence of deliberation and premeditation and thus failed to establish the corpus delicti of first-degree premeditated murder. The trial court should have dismissed the premeditated murder charge after the prosecution presented its case in chief. The defendant's extrajudicial confession was properly admitted, however, because the corpus delicti of felony and second-degree murder had been established independently of the confession. Because the jury's verdict implicitly included a finding that the defendant intended to kill and the finding is supported by sufficient evidence, remand for entry of a conviction of second-degree murder and resentencing was proper.

129 Mich App 362; 341 NW2d 143 (1983) reversed.

### OPINION OF THE COURT

1. HOMICIDE — FIRST-DEGREE MURDER — CONFESSIONS.

In a prosecution of first-degree premeditated murder, the elements of premeditation and deliberation need not be shown

independent of a defendant's confession to sustain a conviction of first-degree premeditated murder where it is shown, independent of the defendant's confession, that common-law or statutory second-degree murder was committed by the defendant (MCL 750.316; MSA 28.548).

2. HOMICIDE — FIRST-DEGREE MURDER — CONFESSIONS.

Where it is shown, without reference to a defendant's confession, that a common-law or statutory second-degree murder was committed by the defendant, no injustice results in admitting a defendant's confession which shows that the murder, in addition, was deliberate and premeditated and thereby results in proving the statutorily heightened crime of first-degree murder (MCL 750.316, 750.317; MSA 28.548, 28.549).

3. HOMICIDE — CORPUS DELICTI.

Corpus delicti, as used in homicide cases, refers not to the body of the deceased, but to the body of the wrong—the loss sustained; in criminal homicide prosecutions, the delicti or essence of the wrong is the wrongful taking of a human life by a criminal agency.

4. HOMICIDE — CORPUS DELICTI.

The corpus delicti rule does not require, in criminal homicide prosecutions, independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession.

DISSENTING OPINION BY CAVANAGH, J.

5. HOMICIDE — FIRST-DEGREE MURDER — CORPUS DELICTI — EXTRAJUDICIAL CONFESSIONS.

*The corpus delicti of first-degree murder, including the elements of premeditation and deliberation, must be established by evidence independent of an accused's extrajudicial confession (MCL 750.316; MSA 28.548).*

6. HOMICIDE — EVIDENCE — CORPUS DELICTI — EXTRAJUDICIAL CONFESSIONS.

*The corpus delicti of an offense may be established by direct evidence, circumstantial evidence, and reasonable inferences drawn from the evidence from which the trier of fact may reasonably find that acts constituting all of the essential elements of the offense have been committed and that someone's criminality was responsible for the commission; the establishment must be independent of a defendant's extrajudicial confes-*

*sion, however; once established, the confession may be admitted
subject to applicable challenge.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *George B. Mullison,*
Prosecuting Attorney, and *Thomas J. Rasdale,*
Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford*)
for the defendant.

RYAN, J. The defendant's conviction for first-de-
gree premeditated murder[1] was vacated by the
Court of Appeals because the prosecution failed to
produce evidence, independent of the defendant's
confession, of the elements of premeditation and
deliberation. The Court found that result to be
required by the corpus delicti rule.

We disagree and reverse.

I

Defendant was charged with the first-degree
murder of his next door neighbor, 79-year-old
Frances Brattler. The information alleged that
defendant had murdered the victim in a wilful,
deliberate, and premeditated manner, or during
the perpetration or attempted perpetration of a
larceny, or both, contrary to MCL 750.316; MSA
28.548. Defendant was bound over on a charge of
open murder, convicted by a jury of first-degree

---

[1] At the time the offense was committed and defendant was tried,
MCL 750.316; MSA 28.548 provided:

"All murder which shall be perpetrated by means of poison, or
lying in wait, or any other kind of wilful, deliberate and premeditated
killing, or which shall be committed in the perpetration, or attempt
to perpetrate any arson, rape, robbery, burglary, larceny of any kind,
extortion or kidnapping, shall be murder of the first degree, and shall
be punished by solitary confinement at hard labor in the state prison
for life."

premeditated murder, and sentenced to the mandatory term of life imprisonment.

Trial testimony was that the victim was found dead in the dining room of her Bay City, Michigan, home on April 15, 1978. It was at first believed that she died from natural causes. However, an autopsy revealed that the cause of death was a single stab wound, inflicted by moderate force, which had penetrated the victim's breastbone and severed the aorta. Death was almost instantaneous. Several bruises were found which were said to have been inflicted shortly before or after death.

The victim's daughter and son-in-law testified that the victim always locked her doors, kept some money in her purse, and was a fastidious housekeeper. When the body was discovered, the front door was unlocked, the victim's wallet was empty, a sugar canister was open in the kitchen, and a cup of sugar with a napkin placed over it was found near the front door. The victim's car was also missing.

Several of defendant's friends testified that they saw him driving the victim's car from April 14 through April 16. They claimed that the defendant told them that he had borrowed it from his aunt or grandmother. Defendant was also seen in the vicinity of his house during the evening of April 13, the night of the murder.

After defendant was arrested on April 16, he told police where the car and the knife he used in the killing could be found. Both were recovered. Defendant's fingerprints were found inside and outside the car, but no identifiable fingerprints were obtained from the knife. Blood matching that of the victim and fibers similar to those in her robe were discovered on the knife. The victim's daughter testified that the knife was similar to one that her mother kept in a kitchen drawer, but the

handle appeared to be different. Defendant's fingerprints were found on a door frame between the kitchen and the dining room.

Shortly after the arrest, defendant gave a taped statement to the police in which he stated, in part, as follows:

> Well, I was—I had just came [*sic*] back from my parents [*sic*] house and, no I didn't I was going from the other room and I was going to our house and then I saw my little brother so I walked with him a little ways and then I went through her yard and she knocked on the window and started yelling at and she called me a little bastard so after, I just ignored it and then she came out the front door and started yelling at me and then after that I just got mad and waited and waited and then at night time I went in and got her.

Later, he modified his story somewhat and claimed he went to the victim's house to apologize to her but, when he entered the house, the victim began yelling at him. Defendant became angry and attempted to strike the victim. She ran into the dining room. Defendant went into the kitchen, found a knife, and stabbed the victim. He became frightened, took the victim's car, and disposed of the knife he used in the killing by dropping it into a sewer.

At trial, when the prosecution offered into evidence the defendant's statement, defense counsel objected, citing the corpus delicti rule and arguing that the defendant's statement was not admissible until all of the elements of first-degree murder, including the elements of premeditation and deliberation, were proved independent of the statement. The objection was overruled and the trial court admitted the statement because the court said the corpus delicti of second-degree murder had been established.

The Court of Appeals, recognizing the existence of a split of authority on the issue in that Court,[2] held that the corpus delicti rule requires that the prosecution must establish premeditation and deliberation by evidence other than a defendant's extrajudicial statement. The Court reached that conclusion because it found that the rule announced in "[*People v Allen,* 390 Mich 383; 212 NW2d 21 (1973)] is applicable to the present case." After concluding that the record in this case did not contain independent evidence of premeditation or deliberation, the Court of Appeals reduced the defendant's conviction to second-degree murder and remanded the case to the trial court for resentencing. Defendant's remaining allegations of error were rejected.

We think the Court of Appeals erred in its

---

[2] *People v Norwood,* 68 Mich App 730, 735-736; 243 NW2d 719 (1976), *lv den* 399 Mich 827 (1977), *People v Rappuhn,* 55 Mich App 52, 57; 222 NW2d 30 (1974), *lv den* 393 Mich 808 (1975), and *People v Sparks,* 53 Mich App 452, 458-459; 220 NW2d 153 (1974), *lv den* 393 Mich 135; 224 NW2d 481 (1974), held that the corpus delicti rule does not require the prosecution to establish the element of premeditation and deliberation for first-degree premeditated murder independent of the defendant's extrajudicial confession. Although we denied defendant's application for leave to appeal in *Sparks,* we specifically declined at that time to accept the Court of Appeals analysis of the corpus delicti issue:

"In denying leave, this Court does not wish to be understood as accepting the distinction between felony and premeditated murder in the application of the rule enunciated in *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), drawn by the Court of Appeals in deciding this case."

The majority of Court of Appeals decisions, however, have applied *Allen,* a felony-murder case, to first-degree premeditated murders. See, *e.g., People v Irby,* 129 Mich App 306, 322; 343 NW2d 303 (1983); *People v Doyle (On Remand),* 129 Mich App 145, 153; 342 NW2d 560 (1983); *People v Conklin,* 118 Mich App 90, 92-93; 324 NW2d 537 (1982); *People v Oliver,* 111 Mich App 734, 740; 314 NW2d 740 (1981), *lv den* 414 Mich 970 (1982); *People v Johnson,* 93 Mich App 667, 672; 287 NW2d 311 (1979); *People v Allen,* 91 Mich App 63, 66; 282 NW2d 836 (1979); *People v Wells,* 87 Mich App 402, 408-409; 274 NW2d 797 (1978); *People v Hawkins,* 80 Mich App 481, 485; 264 NW2d 33 (1978); *People v Juniel,* 62 Mich App 529, 536; 233 NW2d 635 (1975), *lv den* 396 Mich 811 (1976).

application of the corpus delicti rule to the facts of this case.[3]

## II

The history of the development of the common-law corpus delicti rule demonstrates that in homicide cases, of which this is one, the purpose for the rule is satisfied if it is shown, independent of the defendant's statement, that the named victim is dead as a result of some criminal agency. See Perkins, Criminal Law (2d ed), p 104; LaFave & Scott, Criminal Law, pp 16-17; 45 ALR2d 1316; Anno: 99 L Ed 110; *People v Mondich,* 234 Mich 590; 208 NW 675 (1926).

The historic office of the corpus delicti rule in homicide cases is to guard against, indeed to preclude, conviction for a criminal homicide when none was committed. Many of the early cases in which the rule, as applied to homicide cases, is discussed were prosecutions for killings occurring aboard ships upon the high seas. Frequently in such cases no body was found, for obvious reasons. As a result, the argument was advanced, and with occasional success, that no conviction should be

─────────────────────

[3] The Court of Appeals opinion contains no analysis of the application of the corpus delicti rule to premeditated murder cases. Instead, the Court relied, for its conclusion, upon Justice LEVIN's opinion for the Court of Appeals in *Allen* which was later adopted by this Court. *Allen,* however, was a first-degree felony-murder case, not a first-degree premeditated murder case. Therefore, the "independent evidence" required by *Allen* was evidence of another felony, not a state of mind of the defendant. Moreover, when *Allen* was written, a conviction for first-degree felony murder could be obtained in this state for any homicide, even accidental homicide, occurring during the commission of one of the felonies enumerated in the first-degree murder statute. Consequently, the homicide itself, in such cases, need not have been a "criminal homicide" in the common-law sense. That is no longer the case because in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), we held that a killing occurring during the perpetration of one of the felonies enumerated in MCL 750.316; MSA 28.548 is murder in the first degree only if the killing amounted to murder at common law.

obtained absent some evidence, independent of the
defendant's confession that there was an unlawful
killing, and the evidence must include proof of the
existence of a corpse. However, early English
courts resisted the adoption of such a rule, stating,
in one case:

> By the "corpus delicti," subject of the crime, is
> not meant that the subject of the crime must be so
> extent, as to fall under the senses; but that the
> loss sustained is felt and known. As for example:
> in the crime of murder, though the body cannot be
> reached, yet the particular loss is known . . . .
> [*Captain Green's Trial,* 14 How St Tr 1199, 1246
> (Scot Adm, 1705).]

Professor Perkins points out that Justice Storey of
the United States Supreme Court felt so strongly
on the subject that he said of the notion that it
was necessary that a body be found as a condition
of successful prosecution of a murder case:

> [A] more complete encouragement and protec-
> tion for the worst offenses of this sort could not be
> invented, than a rule of this strictness. It would
> amount to a universal condonation of all murders
> committed on the high seas. [*United States v
> Gilbert,* 25 F Cas 1287, 1290 (1834).]

As a consequence of such early forceful expres-
sions of opinion, the rule was developed that, to
satisfy the corpus delicti rule, there need not be
evidence that the body of the deceased was located,
it being sufficient "that the *loss sustained* is felt
and known." *Captain Green's Trial, supra. The
King v Hindmarsh,* 2 Leach 569; 168 Eng Rep 387
(1792); *United States v Williams,* 28 F Cas 636
(1858); *State v Lamb,* 28 Mo 218 (1859); *Campbell v
People,* 159 Ill 9; 42 NE 123 (1895). More modern
decisions likewise rejected the "no body-no corpus

delicti" argument: *Commonwealth v Lettrich,* 346 Pa 497; 31 A2d 155 (1943); *Warmke v Commonwealth,* 297 Ky 649; 180 SW2d 872 (1944); *People v Cullen,* 37 Cal 2d 614; 234 P2d 1 (1951); *Regina v Onufrejczyk,* 1 All E R 247 (1955); *People v Scott,* 176 Cal App 2d 458; 1 Cal Rptr 600 (1959), *app dis* 364 US 471 (1960); *State v Lung,* 70 Wash 2d 365; 423 P2d 72 (1967).

Despite clarification of the early confusion about the meaning of the Latin idiom corpus delicti as used in homicide cases, there remains, among many laymen at least, some lingering misunderstanding that the corpus delicti in such cases refers to the body of the deceased. It does not, of course, and refers instead to the body (corpus) of the wrong (delicti), "the loss sustained."

In criminal homicide prosecutions, the delicti, or essence of the wrong, is the wrongful taking of a human life, a criminal killing. The Legislature has distinguished between criminal homicides of differing types and varying severity of penalty by defining and denominating them as different crimes. Whether the killer took the deceased's life in sudden passion under provocation (manslaughter, MCL 750.321; MSA 28.553) or in circumstances showing that the killer at the time of the homicide entertained an intent to kill, or an intent to inflict great bodily harm, or an intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm would be the probable result (second-degree murder, MCL 750.317; MSA 28.549), or murdered the victim during the commission of a statutorily enumerated felony, or murdered by means of poison or lying in wait, or with deliberation and premeditation (first-degree murder, MCL 750.316; MSA 28.548), are all circumstances relevant to determine the seriousness of the homicide as measured by the maximum

and minimum penalties fixed by the Legislature. In all of the circumstances described above, however, and all the other various criminal homicides defined by the Legislature, the corpus delicti of the crime, the essential wrong, is the "loss sustained"; the taking of a human life by a criminal agency.

It is an inaccurate and unwarranted reading of the history and purpose of the corpus delicti rule that suggests the need for independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession. Such an understanding of the corpus delicti rule loses sight of the historic reason for the rule; to avoid conviction for a homicide that did not occur. The logic of the rule is not served by extending it to require proof, *aliunde* the defendant's confession, not only that a particular deceased lost his life and that the loss is a result of criminal agency but, in addition, proof of the aggravating circumstances which move the seriousness of the crime up the scale of criminal accountability (measured by the severity of the penalty) from manslaughter to second-degree murder or to first-degree murder. Whatever the aggravating circumstances which constitute a crime, second-degree murder instead of manslaughter, or first-degree murder instead of second-degree murder, the danger that a defendant would confess to a criminal killing which never occurred is adequately obviated when it is shown, other than by the accused's confession, that the deceased victim died as a result of a criminal agency.

While it is surely critical to a defendant whether he is convicted of first-degree murder, second-degree murder, or manslaughter, given the differing penalties and related consequences, it does not follow therefrom that the danger that a criminal

homicide conviction might be obtained where none
was committed, requires evidence, in addition to
the defendant's confession, of every element of the
particular degree or grade of homicide charged.

When it is shown, without reference to the
defendant's confession as it was in this case, that a
common-law or statutory second-degree murder
was committed by the defendant, the risk that he
will be convicted of a killing when none occurred
is met and obviated. No injustice results from
receiving in evidence a defendant's confession that
the independently proved second-degree murder he
committed was, in addition, deliberate and pre-
meditated, thereby resulting in guilt of the statu-
torily heightened crime of murder in the first
degree.

Erecting a barrier to such a conviction in the
name of the rubric that all essential elements of
the "crime charged" must be independently
proved, is an unwise, unnecessary, and unjust
obstacle to the fair administration of criminal
justice, comparable to the early common-law argu-
ment that no criminal homicide could be proved
absent discovery of a corpse.

The rule announced by the Court of Appeals
would be a serious and unwarranted burden upon
the ability of prosecutors in Michigan to prove
premeditated murder where no witness to the
killing was present, save the defendant and the
deceased.

We hold that the corpus delicti of first-degree
premeditated murder consists of two elements: the
death of the victim and some criminal agency as
the cause. See *People v Mondich,* 234 Mich 590;
208 NW 675 (1926).

### III

We agree with the Court of. Appeals that the

defendant's remaining arguments of error are without merit.

The judgment of the Court of Appeals is reversed, and the defendant's conviction for first-degree murder is reinstated.

WILLIAMS, C.J., and BRICKLEY, BOYLE, and RILEY, JJ., concurred with RYAN, J.

CAVANAGH, J. (*dissenting*). The majority of this Court today holds that the corpus delicti rule does not require the prosecution to establish, independent of the defendant's confession, each of the essential elements of the crime charged. In the context of first-degree murder, the majority believes that the prosecution need only show the death of the victim and the existence of some criminal agency as the cause. Although the majority's reasoning is persuasive, we decline to adopt their interpretation of the corpus delicti rule for several reasons.

First, Michigan has a long history of interpreting the corpus delicti rule to require proof of each element of the crime charged *aliunde* the defendant's confession. There is no evidence that the rule has unreasonably burdened the fair prosecution of criminal cases. Second, the prosecution has not argued that the rule be modified or *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), be overruled. The prosecution has only urged us to adopt a narrow exception for first-degree premeditated murder or find that sufficient evidence of premeditation and deliberation was introduced apart from the confession. Finally, although *Allen* is not overruled, today's decision will affect the application of the corpus delicti rule in all criminal prosecutions, not just those involving homicide.

Such a radical change in Michigan jurisprudence would be better left to a future case where the parties have adequately briefed and argued the issue.

## I

In *Allen,* this Court adopted verbatim Justice Levin's dissent in *People v Allen,* 39 Mich App 483; 197 NW2d 874 (1972). After an exhaustive discussion of Michigan case law, Justice Levin concluded that, contrary to other jurisdictions and authorities, this Court has quite consistently interpreted the corpus delicti rule to require proof of each of the essential elements of the offense charged. For the reasons stated in his opinion, we believe that this interpretation has a sound legal and logical basis:

> The Latin word *"corpus"* means body. *"Delict"* means a wrong or injury. Thus, generically speaking, the *"corpus delicti"* is the body of the wrong or injury.
>
> There can, however, be a considerable difference between the *wrong* practiced and the *injury* suffered.
>
> A store owner whose merchandise is stolen suffers the same injury whether the larceny is perpetrated by a shoplifter or a burglar, although in legal contemplation the wrongs accomplished are different. Likewise, it is of no importance to a homicide victim whether the killer is guilty of the crime of manslaughter or murder, second or first degree—the victim is just as dead one way or the other.
>
> Whatever may be the correct etymological definition of the term *"corpus delicti,"* and, although there are quotations in Michigan cases from other authorities to the effect that the *corpus delicti* of an offense is established upon showing a specified *injury* and someone's criminality as the source of

the injury, the law in this state is clear that the *corpus delicti* of an offense is not established until the people have introduced evidence from which the trier of fact may reasonably find that acts constituting *all the essential elements* of the offense have been committed and that someone's criminality was responsible for the commission of those acts.

The most recent pronouncement by the Michigan Supreme Court was in *People v Barron,* 381 Mich 421, 425 [163 NW2d 219] (1968). There the Court declared that in order to establish the *corpus delicti* of breaking and entering in the nighttime the people must show all the essential elements of that crime: first, that someone broke and entered the premises; second, that the culprit entered with a felonious intent; third, that the breaking and entering occurred in the nighttime.

Obviously, it made little difference to the victim of the breaking and entering—the owner of a dry-cleaning establishment—whether the larceny occurred in the daytime or in the nighttime, or whether the garments stolen were lifted off the racks without a breaking and entering. Nevertheless, said the Michigan Supreme Court, the *corpus delicti,* the body of the crime, was not established until the people showed all the elements of the offense, including occurrence in the nighttime. Earlier cases so holding include *People v Zwierkowski,* 368 Mich 56 [117 NW2d 179] (1962); *People v Paton,* 284 Mich 427 [279 NW 888] (1938); *People v Boyce,* 314 Mich 608 [23 NW2d 99] (1946); *cf. People v Trine,* 164 Mich 1, 3 [129 NW 3] (1910).

The concept that proof of injury or loss is not enough, that *all* the elements of the crime must be proven to establish the *corpus delicti,* has been recognized in Michigan cases where the offense charged was maintaining a house of ill fame, unlawfully driving away a motor vehicle, and carrying a concealed weapon. In still other cases the Michigan Supreme Court has recognized that proof of the proscribed intent is part of the *corpus*

*delicti. People v Swetland,* 77 Mich 53, 63 [43 NW 779] (1889) (uttering and publishing); *People v Preston,* 299 Mich 484, 493 [300 NW 853] (1941) (malicious poisoning of cattle); *Peterson v Oceana Circuit Judge,* 243 Mich 215, 217 [219 NW 934] (1928) (arson).

\* \* \*

Nevertheless, the hornbook view is, indeed, that the *corpus delicti* of "felonious homicide" consists of evidence of a death and of a criminal agency as its cause. *People v Mondich,* 234 Mich 590, 593-594 [208 NW 675] (1926). Such statements also appear in other Michigan cases where the *corpus delicti* issue was raised in reference to the admissibility of an accused person's confession, but they are for the most part *dictum.*

Only in *People v Mondich, supra,* and *People v Best,* 218 Mich 141, 146 [187 NW 393] (1922), did the Supreme Court affirm a conviction of first-degree murder even though the only evidence establishing the added element aggravating the offense from second-degree to first-degree murder was the confession of the defendant.

Bouvier's Law Dictionary is the only authority cited in *Mondich* for the proposition that in cases of "felonious homicide" the *corpus delicti* is the victim's death and a criminal agency. This is not to say that there is not ample authority for Bouvier's and the Supreme Court's statement. That definition is, however, so clearly out of joint with other statements and holdings of the Supreme Court that it cannot properly be viewed as controlling authority. Moreover, while the *corpus delicti* issue was raised in *Mondich,* the defendant in that case argued only that the body of the victim was not adequately identified, not that the element distinguishing second-degree from first-degree murder—premeditation and deliberation in that case—had not been established independently of his confession. Likewise, in *Best* the *corpus delicti* issue now before us was not briefed, nor was it considered at all by the Court. It "is a well-settled principle that a point 'assumed without considera-

tion is of course not decided.' *Allen v Duffie,* 43
Mich 1, 11 [4 NW 427] (1880)." *Chapman v Buder,*
14 Mich App 13, 20 [165 NW2d 436] (1968). [39
Mich App 495-499.][1]

The majority rejects, *sua sponte,* this long line of
case law and overrules numerous decisions of the
Court of Appeals which have applied *People v
Allen* to first-degree premeditated murder cases[2]
because it believes that requiring the prosecution
to establish each element of either felony or pre-
meditated first-degree murder is too onerous a
burden. We cannot accept this argument for the
reasons stated by Justice LEVIN:

> Second-degree and first-degree murder are sepa-
> rate offenses. Offenders are subject to significantly

---

[1] To the extent that *Mondich* and *Best* are inconsistent with this
opinion, we would overrule them.

[2] See, *e.g., People v Irby,* 129 Mich App 306, 322; 342 NW2d 303
(1983); *People v Doyle (On Remand),* 129 Mich App 145, 153; 342
NW2d 560 (1983); *People v Conklin,* 118 Mich App 90, 92-93; 324
NW2d 537 (1982); *People v Oliver,* 111 Mich App 734, 740; 314 NW2d
740 (1981), *lv den* 414 Mich 970 (1982); *People v Johnson,* 93 Mich
App 667, 672; 287 NW2d 311 (1979); *People v Allen,* 91 Mich App 63,
66; 282 NW2d 836 (1979); *People v Wells,* 87 Mich App 402, 408-409;
274 NW2d 797 (1978); *People v Hawkins,* 80 Mich App 481, 485; 264
NW2d 33 (1978); *People v Juniel,* 62 Mich App 529, 536; 233 NW2d
635 (1975), *lv den* 396 Mich 811 (1976). Only *People v Norwood,* 68
Mich App 730, 735-736; 243 NW2d 719 (1976), *lv den* 399 Mich 827
(1977), *People v Rappuhn,* 55 Mich App 52, 57; 222 NW2d 30 (1974), *lv
den* 393 Mich 808 (1975), and *People v Sparks,* 53 Mich App 452, 458-
459; 220 NW2d 153 (1974), *lv den* 393 Mich 135; 224 NW2d 481 (1974),
held that the corpus delicti rule does not require the prosecution to
establish the element of premeditation and deliberation for first-de-
gree premeditated murder independent of the defendant's extrajudi-
cial confession. The panels in those cases limited *Allen* to cases
involving first-degree felony murder. Although this Court denied
defendant's application for leave to appeal in *Sparks,* we specifically
declined to accept the Court of Appeals analysis of the corpus delicti
issue:

"In denying leave, this Court does not wish to be understood as
accepting the distinction between felony and premeditated murder in
the application of the rule enunciated in *People v Allen,* 390 Mich
383; 212 NW2d 21 (1973), drawn by the Court of Appeals in deciding
this case."

different penalties: persons convicted of first-degree murder must be sentenced to life imprisonment and may not be paroled; persons convicted of second-degree murder may be sentenced to life imprisonment . . . but, in the discretion of the sentencing judge, they may be sentenced to any term of years. . . . A definitional difference which makes for such a radical difference in the law's view of an offender's culpability and in the punishment to which he may be or must be subjected is clearly an essential element.

*  *  *

Just as the people must establish with evidence the essential element distinguishing second-degree murder from first-degree murder in order to convict an accused person of the aggravated offense, so, too, in order to prove the *corpus delicti,* that distinguishing element must be established by evidence independent of the accused person's confession. Otherwise the policy underlying the rule requiring that all the elements of the offense be established independently of a confession—consistently enforced in many Michigan cases—would be eroded in the category of cases where the stakes are the highest, where the accused person has the most to lose and where one would think that the law would be the most solicitous of his rights.

*  *  *

The *corpus delicti* rule reflects an uneasy feeling based on experience that persons who attribute statements to accused persons are often not trustworthy witnesses and that confessions are sometimes obtained under circumstances which make them unreliable. . . . The [rule] seeks to protect the defendant against conviction for committing a crime that no one committed on the basis of evidence that experience teaches us is sometimes unreliable. [39 Mich App 502-505.]

## II

In *Allen,* this Court held that in order to estab-

lish the corpus delicti of first-degree felony murder, the elements of the underlying felony must be shown by evidence independent of the defendant's confession. The prosecution does not challenge this holding, but maintains that it should not be required to establish independently the element of premeditation and deliberation when first-degree premeditated murder is charged. The prosecution reasons that at the time *Allen* was decided, a defendant could be convicted of felony murder for an accidental death arising during the course of a felony.[3] It would have been unfair to escalate the offense to first-degree murder solely on the defendant's extrajudicial statements. Such concerns are allegedly not present where first-degree premeditated murder is charged since the prosecution is required to establish second-degree murder as part of the corpus delicti. The prosecution further contends that applying *Allen* to first-degree premeditated murder would unduly hinder the prosecution of cases where there are no eyewitnesses.

We cannot accept the prosecution's argument. Justice LEVIN's reasoning in *Allen* is equally applicable to felony and premeditated murders. Furthermore, there is no legitimate reason to treat felony and premeditated murders differently for purposes of the corpus delicti rule. Since our decision in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), a defendant cannot be convicted of felony murder unless the murder occurred during the perpetration or attempted perpetration of certain enumerated offenses *and* the defendant committed the killing with the intent to kill, the intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily

---

[3] Prior to *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), a defendant could be convicted of first-degree felony murder if he merely intended to commit the underlying felony.

harm with the knowledge that death or great bodily harm is the probable result. Under *Allen,* the prosecution is required to establish, independent of the defendant's extrajudicial confessions, the corpus delicti of second-degree murder and the underlying felony which escalates the offense to first-degree murder.

When the charged offense is a wilful, deliberate and premeditated murder, a defendant cannot be convicted of first-degree murder unless he committed the killing with the intent to kill[4] and that intent was deliberate and premeditated. *People v Dykhouse,* 418 Mich 488, 495; 345 NW2d 150 (1984). The prosecution admits that under the corpus delicti rule, it is required to establish, independent of the defendant's extrajudicial confessions, that the defendant intended to kill. However, it wishes to be relieved of its duty to establish independently the element of *premeditation and deliberation,* which escalates the offense to first-degree murder, merely because it may be a difficult task in some cases. For the reasons stated by Justice LEVIN, we refuse to create an exception to the long-established corpus delicti rule for first-degree premeditated murder.

The prosecution also argues that the corpus delicti rule only applies to extrajudicial confessions, rather than admissions. See *People v Porter,* 269 Mich 284, 289-290; 257 NW 705 (1934).[5] As-

---

[4] The prosecution incorrectly states that second-degree murder is part of the corpus delicti of first-degree premeditated murder. A defendant cannot be convicted of first-degree premeditated murder if he merely intended to inflict great bodily harm or intended to create a very high risk of death or great bodily harm. *Dykhouse, supra,* pp 495-496.

[5] The *Porter* Court distinguished confessions from admissions as follows:

"If the fact admitted necessarily amounts to a confession of guilt, it is a confession. If, however, the fact admitted does not of itself show guilt but needs proof of other facts, which are not admitted by the

suming that this is an accurate statement of the law, we conclude that defendant's statement that he waited until night and "got" the victim, when viewed in the context of the circumstances surrounding the victim's death, was a confession of guilt of first-degree premeditated murder.

## III

We would further hold that the prosecution did not introduce sufficient evidence independent of defendant's confession to establish the corpus delicti of first-degree premeditated murder.

The corpus delicti of a crime may be established by direct evidence, circumstantial evidence, and reasonable inferences therefrom. *People v Hoffmeister*, 394 Mich 155, 158-159; 229 NW2d 305 (1975); *Allen*, 39 Mich App 494. The only disputed element is that of premeditation and deliberation. The prosecution asserts that there are six facts, or

accused, in order to show guilt, it is not a confession but an admission. . . .

"The distinction between confessions and admissions is pointed out in 2 Wharton's Criminal Evidence (10th ed), p 1266 *et seq.* He says:

" '§ 622a. . . . A confession is an acknowledgment of guilt. . . .

" '§ 622b. A confession, although differently phrased by different courts, being an acknowledgment, in express terms, by a party in a criminal case, of the truth of the crime charged, by the very force of the definition logically excludes: first, acts of guilty conduct; second, exculpatory statements; third, admission of subordinate facts that do not constitute guilt.' " *Porter, supra*, p 290.

See also *People v Oliver*, 111 Mich App 734, 740-741; 314 NW2d 740 (1981), *lv den* 414 Mich 970 (1982); *People v Losey*, 98 Mich App 189, 196; 296 NW2d 601 (1980), *rev'd on other grounds* 413 Mich 346; 320 NW2d 49 (1982); *People v Johnson*, 93 Mich App 667, 673; 287 NW2d 311 (1979); *People v Allen*, 91 Mich App 63, 66-67; 282 NW2d 836 (1979); *People v McKinney*, 65 Mich App 131, 137-139; 237 NW2d 215 (1975), *lv den* 397 Mich 809 (1976); *People v Randall*, 42 Mich App 187, 190-191; 201 NW2d 292 (1972).

The limitation of the corpus delicti rule to confessions has been labeled a minority position, *Oliver, supra*, p 741 & n 1 and authorities cited therein, and criticized as inconsistent with the language of *Allen. McKinney, supra*, pp 141-142 (CAVANAGH, J., *dissenting*).

inferences from facts, which cumulatively establish this element.

The prosecution argues first that it can be reasonably inferred that defendant tricked the victim into allowing him into the house by asking for a cup of sugar. Although the victim kept her doors locked and was an extremely neat housekeeper, the front door was unlocked when the body was found, the sugar container was open, and a cup of sugar was near the front door. There was no sign of forcible entry.

We agree that it is reasonable to infer from these facts that defendant employed a ruse to enter the house. However, it is pure speculation to conclude from this inference that he entered with the intent to kill the victim. Defendant may have intended to rob, assault, or merely apologize to the victim for walking across her yard.

The prosecution's second argument is that defendant either had the knife when he entered the house or searched for it in the kitchen before killing the victim in the dining room. If the former situation occurred, defendant clearly premeditated and deliberated. If the latter occurred, the time required to find the knife in the drawer and enter the dining room was sufficient to allow defendant to take "a second look" at his actions.

There are several flaws in this reasoning. It is obvious that defendant either brought the knife with him or obtained it while in the house. The prosecution introduced no evidence, apart from the confession, which would have supported one theory over the other. (The victim's daughter merely testified that the knife was similar to a kitchen knife her mother owned.) If this logic were adopted, an inference of premeditation and deliberation could be drawn whenever a common object is used as a weapon and the prosecution is unable

to show how, when, or where the defendant acquired it.

Assuming that defendant had the knife with him when he entered the house, it would be reasonable to infer that he was carrying it premeditatedly and deliberately. Once again, however, it would have to be further inferred that the premeditation related to an intent to kill. Defendant could have instead intended to use the knife to perpetrate a larceny or terrorize the victim.

Accepting the inference that the knife belonged to the victim, the trier of fact would further have to infer that defendant obtained the knife from the kitchen. However, defendant's fingerprints were found only on the door frame between the kitchen and dining room. No identifiable prints were obtained from the kitchen drawers, table, or countertops. It would be just as reasonable to infer from these facts that the victim obtained the knife, defendant wrestled it away from her, and then suddenly stabbed the victim. When a homicide occurs during a sudden affray, it is "a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse." *People v Tilley,* 405 Mich 38, 44-45; 273 NW2d 471 (1979); *Nye v People,* 35 Mich 16, 19 (1876).

Even assuming that defendant obtained the knife first, the prosecution's argument further assumes that he searched the drawers. There was testimony that the victim stored her knives in a drawer, she normally kept her home very neat, and there was no sign of food preparation. However, the knife drawer was not open when the body was discovered, defendant's fingerprints were not found nearby, and defendant stated that the knife was on the kitchen table. Finally, even if these inferences could be reasonably drawn, the trier of fact would still have to infer that there

was sufficient time between the initial formation of the intent to kill and the stabbing "to afford a reasonable man time to subject the nature of his response to a 'second look.'" *People v Vail,* 393 Mich 460, 469; 227 NW2d 535 (1975).

The third fact to which the prosecution points is the bruises sustained by the victim. However, the medical testimony indicated that the bruises were inflicted very shortly before or after death and could have been inflicted during the struggle in which the victim was stabbed. There is no basis in this record for an inference that defendant, in a cool state of mind, measured, evaluated, and subjected his responses to a "second look" in between the blows he inflicted. *Hoffmeister,* 394 Mich 159.

The fourth fact which allegedly demonstrates premeditation is that defendant inflicted a single stab wound to a vital organ. Such evidence does indicate that defendant intended to kill. However, neither the brutality of a killing nor the use of a lethal weapon is sufficient to justify an inference of premeditation and deliberation. *Id.,* pp 159-160. A single stab wound inflicted by moderate force is as consistent with a sudden impulse as with premeditation.

The prosecution next maintains that since the victim was a neighbor, rather than a total stranger, premeditation can be inferred from this prior relationship. However, there was no evidence, apart from the confession, of any prior altercation or animosity between defendant and victim which would tend to show a motive for the killing. The mere fact that the defendant and victim were acquainted cannot reasonably support an inference of premeditation and deliberation.

Finally, defendant's post-homicide conduct in taking the victim's car and disposing of the knife

is allegedly consistent with premeditation and deliberation. Leaving the scene of a crime and disposing of a murder weapon, however, are just as consistent with an unpremeditated murder. Defendant's theft of the car may have been the result of panic, an opportunistic exploitation of death, or a plan to commit larceny rather than murder. Although these actions may be indicative of defendant's post-murder state of mind, they suggest little or nothing about his thoughts before or during the murder. *Id.,* p 161, n 7; *People v Morrin,* 31 Mich App 301, 332; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971).

Facts and permissible inferences which individually are insufficient to establish an element of an offense may cumulatively establish the element in some cases. This is not such a case. The prosecution presented no evidence independent of defendant's confession from which a trier of fact could reasonably conclude that defendant committed the murder in a wilful, deliberate, and premeditated manner. Such a conclusion would be pure speculation. "The *corpus delicti* cannot be established by a surmise supplemented by a guess." *People v Zwierkowski,* 368 Mich 56, 60; 117 NW2d 179 (1962); *People v Kirby,* 223 Mich 440, 451; 194 NW 142 (1923).

Although the prosecution failed to establish the corpus delicti of first-degree premeditated murder, defendant's extrajudicial confession was properly admitted because the corpus delicti of felony and second-degree murder had been established. *Allen,* 39 Mich App 500, n 14. The trial court, however, should have dismissed the premeditated murder charge after the prosecution's case in chief because of the failure to present any evidence of premeditation and deliberation independent of defendant's

confession.[6] Since we concur with the majority's resolution of the issues presented in defendant's cross-application, and the jury's verdict implicitly included a finding that defendant intended to kill and this conclusion is supported by sufficient evidence, we would vacate defendant's conviction for first-degree murder. The Court of Appeals correctly concluded that this case should be remanded to the trial court for entry of a judgment of conviction of second-degree murder and resentencing.[7] See *Allen,* 390 Mich 383.

LEVIN, J., concurred with CAVANAGH, J.

[6] Defendant further contends that he was improperly bound over on an open murder charge because the prosecution failed to establish premeditation and deliberation independent of defendant's confession.

The corpus delicti rule applies to preliminary examinations. *People v Asta,* 337 Mich 590, 614; 60 NW2d 472 (1953); *People v White,* 276 Mich 29, 31; 267 NW 777 (1936); *Juniel,* n 2 *supra,* 62 Mich App 536. The examining magistrate need not determine the degree of murder at the preliminary examination. *People v Davis,* 343 Mich 348, 355; 72 NW2d 269 (1955); *Cargen v People,* 39 Mich 549, 551 (1878); *People v Clay,* 91 Mich App 716, 723; 283 NW2d 870 (1979), *lv den* 408 Mich 857 (1980). Defendant was properly bound over on an open murder charge since the elements of first-degree felony murder and second-degree murder were sufficiently established *aliunde* defendant's confession. Even if the examining magistrate should have dismissed the premeditated murder charge, defendant's conviction need not be reversed and the information quashed since there was sufficient evidence to bind him over on other charges. *People v Oster,* 67 Mich App 490, 499; 241 NW2d 260 (1976), *lv den* 397 Mich 848 (1976).

[7] Although the sentencing judge stated that he would have sentenced defendant to life imprisonment even if he had been convicted of second-degree murder, resentencing is required. The judge, the prosecutor, and defense counsel all assumed that defendant would be ineligible for parole under Proposal B, MCL 791.233b; MSA 28.2303(3), if a life sentence for second-degree murder were imposed. In light of *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984), this assumption is erroneous.